COMMONWEALTH *vs.* LEWIS BELANGER.

No. 90-P-435.

Middlesex. October 12, 1990. - January 25, 1991.

Present: KASS, FINE, & IRELAND, JJ.

*Minor*, Employment. *Due Process of Law*, Vagueness of statute. *Public Welfare Offense.*

Sections 62 and 95 of G. L. c. 149, which regulate the employment of minors, were not, when read together, inconsistent, and a District Court judge incorrectly allowed a motion to dismiss a complaint for violation of § 62(10) on the ground that the statutory scheme was conflicting, misleading and unconstitutionally vague. [33-35]

COMPLAINT received and sworn to in the Malden Division of the District Court Department on May 26, 1989.

On appeal to the jury session of that division, a motion to dismiss was heard by *Ellen Flatley*, J.

*Judy G. Zeprun*, Assistant Attorney General, for the Commonwealth.

*Edward S. Robertson* for the defendant.

KASS, J. Lewis Belanger is a proprietor of Commonwealth Carrier, a pick up and delivery service. In 1988, he hired a seventeen year old high school student to work for him and, by putting the student behind the wheel of a company van, transgressed G. L. c. 149, § 62(10). That statute is one of a set of provisions found between G. L. c. 149, §§ 59-105, which regulate work by women and children. Violation of § 62 carries a ten to fifty dollar fine or a month's imprisonment for the first offense. See G. L. c. 149, § 78. A District Court judge, after a bench trial, found Belanger guilty and imposed a fifty dollar fine. Belanger appealed to a jury of six and, as a preliminary matter, moved to dismiss the complaint on the ground that conflicting provisions within c. 149 made

the statutory scheme misleading and unconstitutionally
vague. A judge of the District Court allowed the motion to
dismiss on the basis of a conflict between §§ 62 and 95, and
the Commonwealth has appealed. We think § 62 is suffi-
ciently clear and precise to withstand constitutional attack
and we reverse.

   1. *Effect of the "educational certificate."* Specifically,
§ 62(10), proscribes the employment of a minor under eigh-
teen "in operating motor vehicles of any description, except
in the course of employment in an automobile repair shop."
At the time he was hired, the seventeen-year-old (who was
later killed in an accident while operating a motor vehicle for
Commonwealth Carrier) had furnished Belanger with a doc-
ument entitled "Educational Certificate." That is the docu-
ment, issued pursuant to G. L. c. 149, § 95, upon which the
court relied in granting the motion to dismiss in the District
Court.

   Section 95 provides that "No minor over sixteen and under
eighteen shall be employed . . . by an express or transporta-
tion company . . . unless his employer procures and keeps
on file an educational certificate showing the age of the mi-
nor and whether or not he meets the requirements for the
completion of the sixth grade of the public schools of the
town where he resides." The certificate in this case was a
form supplied by the Department of Labor and Industries
and completed by the employee. It states, among other
things, that: the minor has completed the eleventh grade; the
certificate is valid only for out-of-school time; the employer is
Commonwealth Carrier; and the employment is "Carrier/
Deliver and pick up packages." In the same block of type
which contains the ritual language of certification, there ap-
pears the sentence: "Employment for the minor named is au-
thorized only under the conditions stated on the reverse side
of this certificate and is subject to the provisions of G. L.
ch. 149, forbidding employment in certain classifications of
labor."

   We understand that an employer looking at the "Educa-
tional Certificate" might think it stands for more than it does

and that it is a permit. It is decorated with the seal of the Commonwealth and, indeed, in the signature block for the superintendent of schools, the certificate is referred to as a "permit." Yet the form states quite expressly that certain classifications of labor may be forbidden. The print in which that warning is delivered is no more fine than the rest of the print on the face of the form.

We also understand the practical difficulty an employer may have in finding the way to and through the statutes of Massachusetts. A set of the General Laws is not standard equipment on the backbar of the average businessperson. That difficulty, however, is not peculiar to the statutory scheme in question but pertains to the whole vast underbrush of statutes and regulations which govern the lives of the inhabitants of the Commonwealth or the country, whether the subject is conditions of employment, health, the manufacture and distribution of food, the sale of securities, the lending of money, the sale of alcoholic beverages, waste disposal, or something else. When statutes impose punishment out of considerations of public policy, lack of knowledge of the law or of the fact that the law has been violated does not exonerate the person who may have unwittingly violated the statute. In such instances, the old chestnut applies that ignorance of the law is no excuse. *Commonwealth* v. *Raymond*, 97 Mass. 567, 569 (1867). *Commonwealth* v. *Everson*, 140 Mass. 292, 295 (1885). Transgressions of that sort of statute have been described as "public welfare" or "strict liability" offenses. See *Morissette* v. *United States*, 342 U.S. 246, 256-258 (1952); *West's Case*, 313 Mass. 146, 150-151 (1943); *Commonwealth* v. *Buckley*, 354 Mass. 508, 510-511 (1968). Compare *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 364 (1982), which dealt with whether the defendant in that case knew that the medication he had ingested had an effect on his capacity to drive a car. Cf. *Commonwealth* v. *Klein*, 372 Mass. 823, 833 (1977).

2. *Asserted inconsistencies between § 62 and § 95.* Belanger's argument that § 62 and § 95 are so inconsistent as to bewilder and ensnare the ordinarily conscientious employer

does not survive inspection. Section 62, as we have observed, states a prohibition against the employment of anyone under eighteen "in operating motor vehicles of any description." That prohibition was introduced into the Massachusetts statutes by St. 1913, c. 831, § 5, as part of an "act to regulate the labor of minors." During the ensuing seventy-seven years, the list of forbidden employment has changed very little. The purpose of those prohibitions is to protect persons under eighteen from exposure to danger "that they might not fully realize on account of their youth, inexperience, lack of foresight and want of restraint." *West's Case*, 313 Mass. at 151. *Bagge's Case*, 5 Mass. App. Ct. 839, 840 (1977). See also *Conrad* v. *Mazman*, 287 Mass. 229, 237 (1934); *Boardman's Case*, 365 Mass. 185, 189 (1974).

The lineage of § 95 begins with St. 1887, c. 433, § 2, the first of a series of statutes that limited the employment of minors who could not read and write in English. With very few exceptions, the text of § 95 as it now reads in the General Laws appeared in St. 1926, c. 188, § 3, an act self-proclaimed as concerned with the education of minors. One cannot read § 95 without being aware that it is directed to assuring that youths between sixteen and eighteen are minimally educated and that their employment will not interfere with attaining that objective. For example, if the certificate issued by the school superintendent discloses that the youth has not met the requirements for completion of the sixth grade and the community has a public evening school, the employer may not employ the youth unless the latter attends evening school and presents to the employer a record of regular attendance at evening school. So different is the subject matter of § 95 from that of § 62, dealing with prohibited occupations, that the claim of inconsistency between the two, and consequent vagueness in the statutory scheme, is altogether unpersuasive.

That § 95 identifies certain categories of work,[1] among them "an express or transportation company," at which a minor may labor if the minor has a certificate of education, does not legitimize permitting the minor to engage in work prohibited under § 62. The distinction between permitted workplace and prohibited work was remarked upon in *West's Case*, 313 Mass. at 151, in which the court said that a youth might lawfully be employed where there was a hazardous machine but could not, under § 62(3), clean such a machine while it was in motion.

The statutory scheme "provide[s] a reasonable opportunity for a person of ordinary intelligence to know what is prohibited." *Commonwealth* v. *Jasmin*, 396 Mass. 653, 655 (1986). When, as here, economic regulation is involved, the test of precision is less strict. *Ibid. Commonwealth* v. *John G. Grant & Sons, Co.*, 403 Mass. 151, 154 (1988). We have no difficulty concluding that §§ 62 and 95 of c. 149, read together, do not produce a constitutional infirmity.

The order allowing the motion to dismiss is vacated and the case is to stand for trial in the jury-of-six session of the Cambridge District Court.

*So ordered.*

---

[1]Since those categories begin with employment in "a factory, workshop, manufacturing, mechanical or mercantile establishment," the scope of employment described is very wide.