LOUISE C. GOLDBERG & others[1] *vs.* BOARD OF HEALTH OF
GRANBY & another.[2]

Hampshire. March 7, 2005. - July 12, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Department of Environmental Protection. Solid Waste Management. Municipal*
*Corporations,* Board of health. *Administrative Law,* Regulations, Agency's
interpretation of regulation, Judicial review. *Statute,* Construction.

In an action brought by residents living near a solid waste landfill, alleging
that the decision of a local board of health (board), allowing the landfill
operator to place a vertical addition on the landfill and declining to take
into account the landfill's proximity to residential areas, contravened the
board's obligations under the waste management siting provisions of G. L.
c. 111, §§ 150A and 150A ½, and the regulations promulgated thereunder
by the Department of Environmental Protection (department), the judge did
not err in granting judgment on the pleadings in favor of the board, where
the residents did not meet their burden of showing that the applicable
regulations (which provided an abbreviated approval procedure for landfill
"modifications" such as vertical additions) constituted an unreasonable
interpretation of the statute [631-636]; where the department's action in
interpreting those regulations to allow a truncated site assignment process
for vertical additions was not patently wrong, unreasonable, arbitrary,
whimsical, or capricious [636-637]; where the board was justified in fol-
lowing the department's regulations and the department's interpretations of
its own regulations in evaluating the addition [637]; and where the deci-
sions of the department and the board not to require compliance with the
residential setback regulation set forth in 310 Code Mass. Regs.
§ 16.40(3)(a)(15) (2001) were not erroneous as a matter of law [637-639].

CIVIL ACTION commenced in the Superior Court Department on
July 9, 2003.

The case was heard by *Mary-Lou Rup,* J., on motions for
judgment on the pleadings.

The Supreme Judicial Court granted an application for direct
appellate review.

[1] Eighteen owners or residents of property in Granby and South Hadley.

[2] Holyoke Sanitary Landfill, Inc. (HSLI), intervener.

*Wendy H. Sibbison* (*Albert E. Bessette, Jr.*, with her) for the plaintiffs.

*Kenneth L. Kimmell* for Board of Health of Granby.

*Martin R. Healy* for Holyoke Sanitary Landfill, Inc.

MARSHALL, C.J. The plaintiffs own or live in residences located near a solid waste landfill (landfill) operated by Holyoke Sanitary Landfill, Inc. (HSLI), in Granby. In 2003, the board of health of Granby (board), acting on a favorable report of the Department of Environmental Protection (department), allowed HSLI to deposit two million cubic yards of solid waste on top of the then-existing landfill. The plaintiffs contend that the board's decision contravened its obligations under the solid waste management siting provisions of G. L. c. 111, §§ 150A and 150A ½, and the regulations promulgated thereunder. A judge in the Superior Court disagreed and on cross motions for judgment on the pleadings granted judgment for the defendants. We granted the plaintiffs' application for direct appellate review and now affirm.

1. *Background.* The landfill has accepted waste since 1972. When the events at issue here began, HSLI had last received permission to expand the landfill in 1996, pursuant to an application process begun in 1993. The 1996 expansion had required a permit, see 310 Code Mass. Regs. § 19.030 (1994), a "site suitability report" from the department, see 310 Code Mass. Regs. § 16.13 (2001), and a "site assignment" from the board.[3] G. L. c. 111, § 150A. HSLI made representations in its 1993 application as to the expected volume of waste that the landfill would accept, and the 1996 permit the department issued for the landfill specified a maximum volume of ap-

---

[3] "'Site Assignment' means a determination by a board of health or by the Department as specified in [G.] [L.] c. 111, § 150A[,] which:

"(a) designates an area of land for one or more solid waste uses subject to conditions with respect to the extent, character and nature of the facility that may be imposed by the assigning agency after a public hearing in accordance with [G. L.] c. 111, § 150A . . . .

"(b) . . . The area of land site assigned under 310 [Code Mass. Regs. §] 16.02: Site Assignment shall be limited to the lateral limits of the waste deposition area ('the footprint')."

310 Code Mass. Regs. § 16.02 (2001).

proximately 1.5 million cubic yards. The 1995 site assignment issued by the board, however, contained no limitation on the height or volume of the landfill. In 2000, HSLI proposed to add new waste on top of thirty-two acres of the existing ninety-acre landfill (vertical addition), without expanding the geographic "footprint" provided for by the 1995 site assignment. Unsure whether the vertical addition would require a new site assignment, HSLI requested guidance from the department in a July, 2002, letter.

The department's response to HSLI, and the developments subsequent to that response, involve details of the statutory and regulatory scheme for solid waste landfills, which we summarize below.

General Laws c. 111, §§ 150A and 150A ½, provide the "process for obtaining a facility site assignment" for a solid waste landfill, a process we discussed at length in *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 11-12 (2000). Section 150A requires a site assignment "for a new facility or the expansion of an existing facility" as a landfill. However, § 150A does not define the terms "new facility or the expansion of an existing facility," a task the parties agree the Legislature delegated to the department. Pursuant to its authority, the department has defined "[e]xpand a [s]ite" to mean "to move a solid waste facility's operation to a previously unassigned site that is contiguous to the original site or to modify a solid waste facility's operation causing it to exceed any capacity or total volume limit *stated in its current site assignment*" (emphasis added). 310 Code Mass. Regs. § 16.02 (2001). The plaintiffs do not contend that the department's interpretation of the statute is in this regard erroneous.

As the regulation makes clear, the department does not consider every change (including an increase in capacity) to a landfill to constitute an "expansion." Here, HSLI did not propose to "expand a site," as "expansion" is defined under the regulation. 310 Code Mass Regs. § 16.02. Its plans involved neither moving the landfill's "operation to a previously unassigned site" nor exceeding "any capacity or total volume limit

stated in its current site assignment." *Id.*[4] However, in addition to promulgating procedures for "a new facility or the expansion of an existing facility," the department has established a procedure for the "major modification" of an existing landfill, a term not found in the statutes. Included among the projects deemed "major modifications" are "vertical expansions beyond the limits of an approved plan." 310 Code Mass. Regs. § 16.22(2). The regulations, in practical effect, provide different approval processes for "expansions" and for "major modifications." Pursuant to § 150A, no site assignment for "a new facility or [an] expansion" may issue until it is clear "that the [seventeen] siting criteria of [§ 150A ½] have been met by the proposed site."[5] However, pursuant to the regulations, an application for "a major modification" need not involve a full evaluation of all seventeen § 150A ½ criteria but, rather, at the department's discretion, may be required to satisfy an abbreviated review "that addresses all criteria affected by the modification, as determined by the [d]epartment in writing." 310 Code Mass. Regs § 16.22(2).

Returning to the events of 2002, in response to HSLI's inquiry, the department notified HSLI in a letter dated September 9, 2002, that the vertical addition would constitute a "major modification" of the landfill. The department informed HSLI that the criteria "affected" by the proposed vertical addition were (1) traffic and access to the site; (2) potential for the creation of nuisances; (3) consideration of other sources of contamination or pollution; and (4) "any additional site suitability criteria . . . requested in writing by the [board]."[6]

Absent from the criteria selected by the department was any

----

[4]The plaintiffs contend that because HSLI stated in its application for the 1995 site assignment that the "lifetime capacity" of the landfill would be 1,530,000 cubic yards, the site assignment incorporated a capacity limit "as a matter of law." The 1995 site assignment did "state" several conditions, but these included no limit on the landfill's capacity. Neither the regulations nor our cases suggest that *unstated* conditions may be incorporated into a site assignment for a solid waste landfill.

[5]The department has listed and further defined these statutory "criteria" at 310 Code Mass. Regs. § 16.40 (2001).

[6]Using the language of the regulation, the department termed the proposed vertical addition a "vertical expansion beyond the limits of an approved plan." The language implies the department's determination that the addition

reference to G. L. c. 111, § 150A ½ (6), which calls for landfill site assignments to take into account a site's proximity to residential areas. The statute itself does not specify any "restricted area" or "setback" from residential property, but the department regulations do. Prior to June, 2001, 310 Code Mass. Regs. § 16.40(3)(a)(15) established as a "restricted area," deemed unsuitable for landfill siting, those lands within 500 feet of a residential dwelling. In 2001, the department increased this "setback" to 1,000 feet. Nearly all of the plaintiffs own or reside in property between 500 and 1,000 feet from the landfill, and as we discuss below, the department's and board's refusals to consider the 1,000 foot setback is central to the plaintiffs' claims.

In December, 2002, HSLI submitted to the department an "Application to Modify the Existing Site Assignments for the Granby Sanitary Landfill." The department issued a favorable site suitability report and forwarded it to the board. In May, 2003, the board, conducting its own independent review, see G. L. c. 111, § 150A, held two days of hearings. There, the plaintiffs asserted that the proposed vertical addition constituted an "expansion" and asked the board to require compliance with all of the siting requirements of the department regulations or, at a minimum, to determine that the 1,000 foot residential setback was among the criteria "affected" by HSLI's plans.[7] The board rejected the plaintiffs' suggestions and determined that HSLI's compliance with the siting criteria identified by the department would "fully protect[] the public health, safety and the environment, and that no further meaningful protection would be achieved by applying any of the other siting criteria." In July, 2003, the board granted HSLI's application. The plaintiffs petitioned for relief in the Superior Court, pursuant to G. L. c. 30A, § 14.[8]

2. *Discussion.* The plaintiffs raise several challenges to the

would not be the type of "major modification" classified as a "modification required to 'Expand a Site.' " 310 Code Mass. Regs. § 16.22(2). See note 9, *infra.*

[7]The plaintiffs claim that a holding that the 1,000 foot setback applies to the landfill, in practical effect, would obligate HSLI to purchase their properties.

[8]General Laws c. 30A, § 14, provides, "[e]xcept so far as any provision of law expressly precludes judicial review, any person or appointing authority aggrieved by a final decision of any agency in an adjudicatory proceeding, whether such decision is affirmative or negative in form, shall be entitled to a

board's approval of the vertical addition. Reduced to their principal points, these are (a) the statute forbids "the truncated site assignment inquiry [the department] allows" for vertical additions; (b) the department regulations themselves do not allow for the action the department undertook in abbreviating the site review process; (c) the board had an independent duty to evaluate the 2003 site assignment using the full panoply of statutory "siting criteria"; and (d) the decisions of the department and the board not to require compliance with the new 1,000 foot residential setback regulation were erroneous as a matter of law. We discuss each of these arguments in turn.

(a) *Legality of the regulatory scheme under the statutes.* The plaintiffs' central contention is that the only site assignment process for HSLI's 2000 proposal that satisfies the statutes is one that considers all of the factors enumerated in G. L. c. 111, § 150A ½, including the proximity requirement.[9] The statutes require no such reading.

In assessing the legality of an administrative agency's properly promulgated regulations,[10] we employ sequentially two well-defined principles. First, we determine, using conventional tools of statutory interpretation, whether the Legislature has

judicial review" and provides procedures and standards for judicial review of agency action. General Laws c. 111, § 150A, authorizes "[a]ny person aggrieved by a decision of a board of health in assigning or refusing to assign a place as a site for [a landfill to] . . . appeal under the provisions of [G. L. c. 30A, § 14]." On appeal, the defendants have questioned whether the plaintiffs have standing, an issue raised below but not decided. We assume without deciding, as the judge must have, that as close neighbors of the landfill, who complained of the negative impacts of an enlarged landfill on their health and property, the plaintiffs were "aggrieved" for purposes of G. L. c. 30, § 14. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport,* 421 Mass. 719, 721-724 (1996). See also *McGee* v. *Board of Appeal of Boston,* 62 Mass. App. Ct. 930, 930-931 (2004) ("Diminishment of light and air and obstruction of view may be bases for aggrieved person status").

[9]Further, the plaintiffs argue that the regulatory scheme selected by the department "treats all 'expansions' as 'modifications.' " The regulations do provide that "modifications required to 'Expand a Site' " constitute a "major modification." 310 Code Mass. Regs. § 16.22(2). However, as discussed above, HSLI's 2000 proposal for the landfill did not satisfy the regulatory definition of "[e]xpand a [s]ite." See note 6, *supra.* Accordingly, we need not consider the legality of the regulatory scheme for "expansions."

[10]There was no argument raised that any of the department regulations were promulgated improperly.

spoken with certainty on the topic in question, and if we conclude that the statute is unambiguous, we give effect to the Legislature's intent. See *Smith* v. *Commissioner of Transitional Assistance*, 431 Mass. 638, 646 (2000) ("An agency regulation that is contrary to the plain language of the statute and its underlying purpose may be rejected by the courts"); *Massachusetts Hosp. Ass'n* v. *Department of Med. Sec.*, 412 Mass. 340, 346 (1992). Second, if the Legislature has not addressed directly the pertinent issue, we determine whether the agency's resolution of that issue may "be reconciled with the governing legislation." *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 211 (1995). See *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council*, 467 U.S. 837, 842-843 (1984) (describing two-part test used in Federal courts to ascertain validity of challenged agency regulations). The second stage of our analysis requires "substantial deference" to the expertise and statutory "interpretation of [the] agency charged with primary responsibility" for administering a statute. See *Briggs* v. *Commonwealth*, 429 Mass. 241, 253 (1999), citing *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 595 (1992). At the second stage, regulations "are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Berrios* v. *Department of Pub. Welfare*, *supra* at 595-596. As a result, a "[S]tate administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing," unless a statute unambiguously bars the agency's approach. *Id.*, quoting A. Cella, Administrative Law and Practice § 747 (1986).

Frequently, administrative agencies are charged, implicitly or explicitly, with the task of crafting regulations that are more detailed than statutes and tailored to more situations than the legislation specifies. See *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council*, *supra* at 843-844. In examining the regulatory response to statutory silence or ambiguity, it is unimportant whether we would have come to the same interpretation of the statute as the agency. See *Massachusetts Nurses Ass'n* v. *Board of Registration in Nursing*, 18 Mass. App. Ct. 380, 388-389 (1986). That the Legislature, in drafting

G. L. c. 111, §§ 150A and 150A ¹/₂, did not anticipate the exact factual scenario presented here does not make the administrative regulations and rulings that did anticipate such situations invalid. See *Bottomley* v. *Division of Admin. Law Appeals,* 22 Mass. App. Ct. 652, 655 (1986). Statutory silence, like statutory ambiguity, often requires that an agency give clarity to an issue necessarily implicated by the statute but either not addressed by the Legislature or delegated to the superior expertise of agency administrators. See 1 R.J. Pierce, Jr., Administrative Law § 3.4 (4th ed. 2002). Administrative agencies are more suited to the task of clarifying the Legislature's plan through specific rules, and more able to provide for "consistency and coherence," than are courts. *Id.* at § 3.4, at 150. Our deference is especially appropriate where, as here, the statutes in question involve an explicit, broad grant of rule-making authority. See *Dowell* v. *Commissioner of Transitional Assistance,* 424 Mass. 610, 613-614 (1997) (court must consider "broad authority granted the department"). See also *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, supra* at 844 (regulations promulgated under explicit grant of authority "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute").

We turn now to the merits. As to the first stage of our analysis, the plaintiffs claim that because the statutory scheme provides no guidance for defining major modifications to existing landfills that are not "expansion[s]" and because the Legislature has enumerated multiple criteria in § 150A ¹/₂ for evaluating "a new facility or the expansion of an existing facility," G. L. c. 111, § 150A, the statute requires that all of those criteria be used to assess the suitability of every increase in capacity of a solid waste landfill. We disagree. The solid waste facility statutes explicitly grant broad leeway for the department to promulgate regulations governing solid waste management. See G. L. c. 111, § 150A ¹/₂.[11] The plaintiffs can point to no statutory provision that explicitly bars the department's action:

---

[11]Specifically, G. L. c. 111, § 150A ¹/₂, states: "The department of environmental protection, in cooperation with the department of public health, shall promulgate rules and regulations for the siting of facilities pursuant to the provisions of [§ 150A]. Said rules and regulations shall establish site suitability standards and criteria and shall include, but not be limited to, the fol-

the statutes do not define "expansion." Section 150A ½ requires only that the "rules and regulations" of the department "shall include but not be limited to" the enumerated "criteria," and does not prohibit the rule making at issue here. Similarly, § 150A covers the procedure for assigning sites only for new facilities or statutory expansions, based on review of the siting criteria listed in § 150A ½. The statutes do not prohibit the department from instituting specialized procedures for changes to a landfill that are not "expansions." The department has not sought to assert its authority beyond the subject matter delegated to it. Nor has the department attempted to take action that the statutory language bars. Because the statute neither explicitly forbids nor expressly allows the regulation in question, we must proceed to the second stage of our analysis.

The plaintiffs would have us conclude that, in addressing the statute's silence, the department deviated from the Legislature's purpose. The plaintiffs have not carried their burden of proving that the department's general rule making authority over landfills may not be used to differentiate between "expansions" and "major modifications" that are not "expansions," and to provide an abbreviated approval procedure for the latter. It is well within the scope of the department's administrative discretion to differentiate between changes that do not increase an existing landfill's footprint or site assignment mandated limit on capacity, 310 Code Mass. Regs. § 16.02, and expansions that do. It is surely also within the scope of the department's expertise and authority to determine how best to avoid duplicative or nonproductive reviews. The plaintiffs' argument reduces to the proposition that, had they been charged with enforcing the statute, they would have chosen a different regulatory approach that would have required a fuller evaluation of the proposed vertical addition. Even if we might have preferred the plaintiffs' approach (a matter on which we express no view), it is the department's reasonable resolution of the statute's silence, not ours, that must govern. See *Massachusetts Nurses Ass'n* v.

---

lowing considerations . . . ." The statute does not say what the plaintiffs would suggest: that every department evaluation of an alteration to an existing landfill "must include a full evaluation of each of the following considerations."

*Board of Registration in Nursing, supra* at 388-389. We conclude that the plaintiffs have not met their burden of showing that the department's regulations constitute an unreasonable interpretation of the statute.

(b) *The department's interpretation of its own regulations.* The plaintiffs also contend that the department regulations themselves, in part because they contain no separate rule for vertical additions,[12] required consideration of all of the § 150A ½ criteria in evaluating HSLI's proposal. We reject this claim on two grounds. First, we agree with the board that the regulations speak with sufficient clarity to authorize the truncated site assignment process for vertical additions. Second, we accord special deference to an agency's interpretation of its own regulation and "only disturb" the agency's interpretation if it is "patently wrong, unreasonable, arbitrary, whimsical, or capricious." *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 17 (2000), quoting *Brookline* v. *Commissioner of the Dep't of Envtl. Quality Eng'g*, 398 Mass. 404, 414 (1986). Cf. *Christensen* v. *Harris County*, 529 U.S. 576, 588 (2000) (deference to agency interpretation not appropriate where meaning of regulation unambiguous). From the department's September 9, 2002, letter to HSLI, we can conclude that the department interpreted its regulations to allow a truncated site assignment process for vertical additions that are not statutory "expansions." Even if the regulations did leave some ambiguity as to the process required for various modifications to existing landfills[13] in circumstances not present here, we see nothing "patently wrong, unreasonable, arbitrary, whimsical, or capri-

[12]The plaintiffs also claim that the department's interpretation of the "major modification" regulations, 310 Code Mass. Regs § 16.22, potentially conflict with the regulations concerning waivers. See 310 Code Mass. Regs. §§ 16.18, 16.40(6). As the plaintiffs do not dispute the department's interpretation of the statutory term "expansion," and as HSLI's proposed modification does not satisfy the regulatory definition of "expan[sion]," 310 Code Mass. Regs. § 16.02, no "waiver" is implicated here. Rather, the effect of § 16.22 is to provide an opportunity for scrutiny by the board of a proposed modification that, under a different regulatory approach to the statute, might not be required at all.

[13]We have no reason to address any such ambiguity here. However, 310 Code Mass. Regs. § 16.40(1)(a) appears to mandate that *expansions* receive the full inspection contemplated by § 150A ½.

cious" in the department's interpretation of its regulations for "major modifications" in regard to the vertical addition intended for the landfill. *TBI, Inc.* v. *Board of Health of N. Andover, supra.*

(c) *The board's responsibilities.* The plaintiffs next assert that, even presuming the legitimacy of the department's actions, the board violated its independent duty to apply all of the § 150A ½ criteria in evaluating HSLI's application. We conclude that the board was justified in following the department's regulations and the department's interpretation of its own regulations in evaluating the application. On this point, *TBI, Inc.* v. *Board of Health of N. Andover, supra,* is instructive. In that case, we reviewed a town board's reliance on the department's interpretation of these very statutes and regulations. *Id.* at 16-17. We held that the board was not required to conduct an investigation more extensive than the department's and that the board properly could rely on the department's interpretation of its own regulations. *Id.* There is no question that the board thoroughly exercised its plenary review of the facts underlying the department's determination. See *id.* at 11-12. The statute neither requires nor contemplates that the board evaluate the reasonableness of the department regulations or second-guess the department's interpretation of its own regulations. The plaintiffs cite no authority to the contrary.

(d) *The 1,000 foot setback.* Finally, the plaintiffs contend that, even if the department and the board acted properly to authorize an abbreviated site assignment process for the vertical addition, both entities acted erroneously in concluding that the vertical addition did not constitute a statutory "expansion," and that the residential setback referenced in 310 Code Mass. Regs. § 16.40(3)(a)(15) was not among those "criteria affected by the modification." This last point requires us to consider whether the department and the board applied the regulations permissibly in the case at bar. Having done so, we find no merit in the plaintiffs' argument.

Again, longstanding principles limit our review. As we have determined that the regulations themselves are appropriate, the plaintiffs must prove that the factual determinations and adjudicative order appealed from are "unsupported by substan-

tial evidence, unwarranted by facts found on the record as submitted, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *MCI WorldCom Communications, Inc.* v. *Department of Telecommunications & Energy*, 442 Mass. 103, 112 (2004), quoting *Massachusetts Inst. of Tech.* v. *Department of Pub. Utils.*, 425 Mass. 856, 867-868 (1997). See G. L. c. 30A, § 14. Our review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion as an agency or local board, but only "whether a contrary conclusion is not merely a possible but a necessary inference." *Commissioner of Revenue* v. *Houghton Mifflin Co.*, 423 Mass. 42, 43 (1996), quoting *First Data Corp.* v. *State Tax Comm'n*, 371 Mass. 444, 446 (1976).

In this case, the department had sufficient evidence to determine that the proposed vertical addition constituted a major modification of the 1995 site assignment, rather than a statutory "expansion." As HSLI's proposal would bring the existing landfill no closer to any residential property, it was not arbitrary, capricious, or otherwise unreasonable for the department to conclude that the proposed vertical addition did not "affect" the landfill's *proximity* to residential structures in the manner contemplated by the statute.

For similar reasons, we cannot conclude that the board acted erroneously when it explicitly rejected the plaintiffs' proposal to add the 1,000 foot residential setback to the criteria applied to its review of the proposed vertical addition. The board heard substantial evidence, including the objections of the plaintiffs. After weighing the evidence, the board found:

> "[B]ecause . . . the vertical expansion will not cause a nuisance to any nearby property owners, it does not matter whether the landfill is located at least 1,000 feet from the nearest residence (the setback standard for a new landfill), or at least 500 feet from the nearest residence (the setback standard that existed when this landfill received its most current site assignment). Using either standard, there will be no harm to the residents, and no violation of the underlying statutory requirement that the landfill pose no danger to public health, safety, or the environment."

The findings were supported by substantial expert testimony,

and no direct evidence to the contrary was presented by the plaintiffs. The plaintiffs seek to demonstrate the irrationality of the board's action, and to discredit the evidence on which that action was based, by asking that we interpret the 1,000 foot setback regulation in effect since 2001 as a "bright-line rule" that landfills within 1,000 feet of a residential dwelling constitute a health hazard. According to the plaintiffs, such a "bright-line rule" would discredit any expert testimony attesting to the safety of a landfill less than 1,000 feet removed from the nearest residential structure. We disagree with the plaintiffs that the 2001 regulations established a bright-line rule, applicable to "major modifications," from which the department could not depart. Nothing in the regulation compels such an interpretation. It was neither irrational nor arbitrary for the department to conclude that the 1,000 foot setback was inapplicable where HSLI had a reasonable expectation that the 500 foot rule would continue to pertain so long as the footprint of the landfill remained constant, the facility did not violate the conditions of its site assignment, and the company was otherwise complying with the department's regulations. Furthermore, the argument that we should direct the department to apply the 1,000 foot setback as a bright-line rule in every case "essentially asks us to make policy judgments which lie within the province of the Legislature" and the department. *Milton* v. *Personnel Adm'r of the Dep't of Personnel Admin.*, 406 Mass. 818, 825-826 n.8 (1990). As we must, we decline to supplant the board's and the department's analyses of policy and evidence with our own.

3. *Conclusion.* Because the plaintiffs' challenges to the board's decision are without merit, the decision entered in the Superior Court must be affirmed.

*So ordered.*