454 466 Mass. 454 (2013)

Franklin Office Park Realty Corp. v. Commissioner of the Department of Environmental Protection.

FRANKLIN OFFICE PARK REALTY CORP. *vs.* COMMISSIONER OF
THE DEPARTMENT OF ENVIRONMENTAL PROTECTION.

Worcester. May 9, 2013. - September 16, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Department of Environmental Protection. Administrative Law,* Agency's
interpretation of statute, Regulations, Judicial review. *Practice, Civil,*
Review of administrative action. *Environment,* Air pollution. *Asbestos.*
*Statute,* Construction. *Regulation. Words,* "Wilful."

This court invalidated the interpretation of the Department of Environmental
Protection (department) of a provision of the administrative penalties act,
G. L. c. 21A, § 16, providing an exception to the notice requirement of the
act for such noncompliance with laws or regulations that is "willful and
not the result of error," where the statutory language was unambiguous,
and the department's interpretation, i.e., that knowledge of operative facts
that made an action a violation of law was not required prior to the imposition
without notice of a penalty, was inconsistent with the clear intent of the
Legislature, in that it would come close to making all violators strictly li-
able for the payment of penalties without notice. [459-465]

This court concluded that the wilfulness exception to the notice requirement
of the administrative penalties act, G. L. c. 21A, § 16, requires that the
violator of a law under which the Department of Environmental Protection
may assess a civil administrative penalty undertook intentionally the act
that caused the violation, and that the violator either knew or should have
known at least the facts that made the act a violation of the law; further,
this court stated that there is no requirement that a violator either was aware
of the applicable environmental laws or intended to violate those laws.
[465-466]

This court concluded that substantial evidence supported a decision of the
Department of Environmental Protection imposing without prior notice a
penalty under the administrative penalties act, G. L. c. 21A, § 16, where
the plaintiff knew or should have known of the likely presence of asbestos
in roofing shingles. [466]

CIVIL ACTION commenced in the Superior Court Department on
March 22, 2011.

The case was heard by *John S. McCann*, J., on a motion for
judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Louis M. Dundin*, Assistant Attorney General, for the defendant.

*Paul E. White* for the plaintiff.

DUFFLY, J. The plaintiff, Franklin Office Park Realty Corp. (Franklin), challenges the assessment of a penalty in the amount of $18,225, imposed by the Department of Environmental Protection (DEP) for improper handling and disposal of roof shingles that contained asbestos. Franklin argues that, pursuant to G. L. c. 21A, § 16 (administrative penalties act), it was entitled to a notice of noncompliance and the opportunity to cure any violations before a penalty was imposed. The commissioner of the DEP (commissioner) accepted the recommendation of a hearing officer that he affirm the penalty on the ground that Franklin's failure to comply fell within one of six exceptions to the notice requirement because it was "willful and not the result of error" (wilfulness exception), see G. L. c. 21A, § 16,[1] which he interpreted as requiring only a showing of "the intent to do an act that violates the law if done." Franklin sought judicial review

---

[1]General Laws c. 21A, § 16, provides:

> "The [D]epartment [of Environmental Protection (DEP)] may assess a civil administrative penalty on a person who fails to comply with any provision of any regulation, order, license or approval issued or adopted by the department, or of any law which the department has the authority or responsibility to enforce; provided, however, that such noncompliance occurred after the department had given such person written notice of such noncompliance, and after reasonable time, as determined by the department and stated in said notice, had elapsed for coming into compliance; and provided, further, that the department may assess such penalty without providing such written notice if such failure to comply: (1) was part of a pattern of noncompliance and not an isolated instance, or (2) was willful and not the result of error, or (3) resulted in significant impact on public health, safety, welfare or the environment, or (4) consisted of failure to promptly report [unauthorized disposal or release of hazardous material] . . . , or (5) consisted of failure to maintain a permanent solution or a remedy operation status . . . , or (6) consisted of failure to comply with the terms of an activity and use limitation . . . or consisted of knowingly making, or causing any person to make, a false, inaccurate, incomplete or misleading statement in a document submitted to or required to be kept by the department."

Only the second of the six numbered clauses representing exceptions to the requirement that the DEP provide notice of noncompliance is relevant here; we refer to the second clause as the "wilfulness exception."

456                     466 Mass. 454 (2013)

Franklin Office Park Realty Corp. *v.* Commissioner of the Department of Environmental Protection.

pursuant to G. L. c. 30A, § 14; a judge of the Superior Court determined some of the facts found by the hearing officer to be unsupported by substantial evidence, and that the DEP's interpretation of G. L. c. 21A, § 16, was unreasonable and thus not entitled to deference. DEP appealed, and we transferred the case to this court on our own motion.

We conclude that the language "willful and not the result of error" in G. L. c. 21A, § 16, when considered in the context of the statutory scheme and the Legislature's intent, clearly requires a showing that the party who has not complied with the law knew or should have known of the operative facts that made their acts unlawful. The DEP's decision in this case was based on an error of law because its interpretation of the wilfulness exception does not comport with the clear meaning of the statute. However, the hearing officer also found that Franklin knew or should have known of the likely presence of asbestos in the shingles. Based on those findings of fact, we conclude that Franklin's conduct was wilful and not the result of error within the meaning of the administrative penalties act. Therefore, the judgment of the Superior Court must be reversed. As permitted by G. L. c. 30A, § 14, the DEP's decision to the extent that it rests on the hearing officer's findings that Franklin knew or should have known of the likely presence of asbestos in the shingles is affirmed and, on that basis, the DEP's imposition of a penalty without prior notice of noncompliance is affirmed.

*Background and prior proceedings.* Among other environmental protection statutes, the DEP administers and enforces the Massachusetts Clean Air Act, G. L. c. 111, §§ 142A-142O (Clean Air Act). See *Box Pond Ass'n* v. *Energy Facilities Siting Bd.,* 435 Mass. 408, 422 n.13 (2001); G. L. c. 111, § 142A. The DEP assessed administrative penalties against Franklin for its violations of the Clean Air Act, without first providing written notice of noncompliance as set forth in G. L. c. 21A, § 16.[2]

We summarize the hearing officer's findings of fact. "We do

[2]DEP asserts, and Franklin does not dispute, that Franklin committed the following violations in connection with the removal of the roof shingles: (1) failing to notify DEP of a demolition or renovation project involving asbestos-containing materials, in violation of 310 Code Mass. Regs. § 7.15(1)(b) (2005); (2) failing properly to seal the container holding the asbestos shingles, 310 Code Mass. Regs. § 7.15(1)(e) (2005); (3) failing properly to label the

not make a de novo determination of the facts or draw different inferences from the facts found by the agency." *Vaspourakan, Ltd.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 347, 351 (1987), citing *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Comm'n*, 386 Mass. 414, 419-420 (1982). See G. L. c. 30A, § 14 (5).

Franklin has no employees. It owns a piece of property in the town of Mendon, purchased in October, 2008, containing a three-family home and a commercial garage (site). Kevin P. Meehan is the president, treasurer, and sole shareholder of Franklin. Through various entities, Meehan also owns more than thirty other properties, consisting primarily of commercial sites. In addition, he owns Meehan Realty Management (MRM), which maintains the properties, as well as three automobile dealerships.

Shortly after Franklin purchased the site, Meehan became aware of a leak in the roof of the three-family home, and determined that the roof shingles needed to be replaced. He asked Jonathan Orton, an MRM employee who held a Massachusetts construction supervisor's license,[3] to locate a roofer. Orton sought recommendations from a former MRM employee, Emanuel Jordao, and Meehan engaged F&G Roofing and Siding (F&G) based on Jordao's recommendation. F&G agreed to remove the existing shingles and replace them with new asphalt shingles, which were to be provided by MRM. Orton secured from the town of Mendon a building permit requiring that the work comply with the State building code as well as with the requirements of DEP and the United States Environmental Protection Agency.[4] Jordao asked New England Recycling (NER) to provide a "roll-off" container to store construction debris; the

container, *id.*; and (4) contracting to dispose of asbestos-containing material at a facility not approved to manage such material, 310 Code Mass. Regs. § 19.014(3) (2005).

[3]Construction supervisors ensure compliance with the State building code and with DEP regulations concerning construction debris and asbestos. The license is issued by the Department of Public Safety. See 780 Code Mass. Regs. § 110.R5 (2010).

[4]Kevin P. Meehan's written testimony, submitted prior to the hearing, see 310 Code Mass. Regs. § 1.01(12)(f) (2004), did not mention Jonathan Orton's involvement with the project. In written testimony, a DEP environmental analyst stated that he contacted Orton because Orton's name and construction

company was to deliver the container and, following completion of the project, to dispose of the debris. NER was not certified to dispose of asbestos-containing materials.

The project was completed by November 25, 2008, when NER retrieved the container from the site. When the container arrived at NER's facility, NER employees suspected that the materials contained asbestos. An NER employee informed an MRM employee by telephone that NER could not dispose of the shingles because they contained asbestos. NER sealed the container and returned it to the Franklin site. Upon receiving this information, Meehan promptly called an environmental manager and arranged to have the shingles properly sealed, labeled, and disposed of as required by DEP regulations. Meehan asked that the project be expedited, making it more expensive. A DEP environmental analyst inspected the container at the site and observed that it "contained friable asbestos" that was neither sealed nor labeled.[5] DEP then issued a penalty assessment notice to Franklin.

The hearing officer imputed Orton's knowledge to Meehan, and the knowledge of both men to Franklin; he concluded that Orton and Jordao were acting as agents for the benefit of Franklin, and that, through them, Franklin exercised control over the roof replacement project. As to the knowledge of Orton and Meehan, the hearing officer specifically found that:

> "Mr. Orton and Mr. Meehan *knew or should have known that the roofing shingles and other roofing materials could contain asbestos.* They would have discovered such asbestos had they performed due diligence prior to commencing their project to remove and replace the roof. I make these findings based upon: (1) the evidence regard-

supervisor's license number were listed on the building permit; Orton told the analyst that he brought the shingles to the site in the morning and returned around 4 P.M. to "make sure no one fell off the roof or something." The hearing officer found that Orton instructed the roofers regarding what needed to be done at the site.

[5] During his inspection, the DEP analyst took samples of the asbestos-containing shingles, which he sent out for testing. Based on the results of sample analysis, the shingles contained asbestos in an amount far exceeding the threshold of one per cent necessary to be classified as an "asbestos containing material." See 310 Code Mass. Regs. § 7.00 (2009).

ing [Meehan's and Orton's] industry knowledge and experience, (2) the notation at the bottom of the building permit requiring compliance with DEP and EPA requirements, [and] (3) Mr. Orton's and Mr. Meehan's professional backgrounds and experiences, particularly Mr. Orton's status as a licensed Construction Supervisor . . . ." (Emphasis added.)[6]

The hearing officer affirmed the penalty assessment in the amount of $18,225,[7] explaining that Franklin's actions fell within DEP's interpretation of the wilfulness exception:

> "[DEP] also asserts that under the longstanding interpretation of 'willful and not the result of error' it does not matter whether Franklin knew the shingles contained asbestos. I agree with [DEP]. . . . In any event, I have found that Franklin knew or should have known that the shingles could contain asbestos and that due diligence would have disclosed the asbestos."

*Discussion.* The DEP argues that the meaning of "willful and not the result of error," in G. L. c. 21A, § 16, is ambiguous, and therefore, that its interpretation of the statute is entitled to deference.[8] The DEP looks primarily to its adjudications as reflecting the agency's interpretation that knowledge of operative facts is not required before a penalty may be assessed without notice.[9]

In reviewing the validity of policies adopted by decision

---

[6]The hearing officer specifically credited the DEP analyst's testimony that "it is widely known among roofing contractors" that numerous roofing products, including shingles, may contain asbestos.

[7]Franklin does not challenge the calculation of the penalty amount, which is based on factors including the actual and potential impact on the environment and public health, the violator's efforts to come into compliance and remedy the problem, any history of noncompliance, and the amount that may be necessary to deter such actions in the future. See 301 Code Mass. Regs. § 5.25 (2008).

[8]The official regulations promulgated by DEP track the language of the statute, providing only that a penalty "may be assessed without the prior issuance of a Noncompliance Notice if . . . the violation thus being penalized was willful and not the result of error." 310 Code Mass. Regs. § 5.14.

[9]In recent adjudications in which penalty assessments were upheld without notice, the DEP has held that no showing of knowledge, either of the operative facts or of the law, was required to fall within the wilfulness exception. See, e.g., Matter of Accutech Insulation & Contracting, Inc., 17 DEP Rep. 1, 6

making of an administrative agency tasked with implementing and enforcing State statutes, we employ the two-step test used to determine whether regulations promulgated by an agency are valid. See *Board of Appeals of Woburn* v. *Housing Appeals Comm.*, 451 Mass. 581, 592-593 (2008). First, we use "conventional tools of statutory interpretation" to determine "whether the Legislature has spoken with certainty on the topic in question." *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 632 633 (2005) (*Goldberg*). If we conclude that a statute is unambiguous, we will reject any interpretation by an agency that does not give effect to the Legislative intent, see *Massachusetts Hosp. Ass'n, Inc.* v. *Department of Med. Sec.*, 412 Mass. 340, 346 (1992), and set aside or modify the agency's decision because it is "[b]ased upon an error of law." G. L. c. 30A, § 14. It is only where the Legislature has not directly addressed the issue that we proceed to determine whether the agency's interpretation is reasonable, granting "substantial deference" to that agency's particular expertise, see *Goldberg, supra* at 633. In this second step, we will disturb an agency's interpretation of its statutory mandate only if it is "patently wrong, unreasonable, arbitrary, whimsical, or capricious." *Brookline* v. *Commissioner of the Dep't of Envtl. Quality Eng'g*, 398 Mass. 404, 414 (1986), quoting *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 553 (1985).

Here, we do not reach the second step because, relying on ordinary rules of statutory construction, we can discern readily the Legislature's intent as to when a violation of environmental protection laws is "willful and not the result of error." Because the language is not ambiguous, the DEP's interpretation as reflected in its adjudications is not entitled to the substantial

(2010) (acts wilful where licensed asbestos removal contractor "demonstrated the intent to perform the acts that resulted in the violations"); Matter of Seney, 20 DEP Rep. 45, 50 (2013) (immaterial whether violator knew heating system contained asbestos because he intended to dismantle heating system and dismantling caused asbestos violations), citing Matter of Myrtle 107, LLC, 19 DEP Rep. 153, 155-157 (2012) (manager's awareness of asbestos abatement order prior to purchase of property irrelevant to determination of wilfulness). In each of these cases, according to the findings of the hearing officers, the actors knew or should have known that they were handling regulated substances or working in environmentally protected areas, but the hearing officers asserted that this fact, once found, was irrelevant.

deference that would be due if the language were unclear. See *Goldberg, supra* (where statute is ambiguous, "substantial deference" extended to agency charged with primary responsibility for its administration, due to agency's particular expertise).

When called upon to interpret statutory language, we look "to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Boston Police Patrolmen's Ass'n, Inc.* v. *Boston*, 435 Mass. 718, 719-720 (2002), quoting *O'Brien* v. *Director of the Div. of Employment Sec.*, 393 Mass. 482, 487-488 (1984). Although "willful and not the result of error" is not specifically defined in G. L. c. 21A, § 16, "[a]id in arriving at the meaning of the word 'willfully' may be afforded by the context in which it is used." *United States* v. *Murdock*, 290 U.S. 389, 395 (1933). See *Spies* v. *United States*, 317 U.S. 492, 497 (1943).

The purpose of the administrative penalties act was to provide a mechanism for routine enforcement, with a focus on correction; the act responded to a concern that minor violations of environmental law had been left uncorrected and unpunished because, where violators did not respond to a notice of noncompliance from the DEP, cases had to be referred to the Attorney General for enforcement through costly judicial action. See D.L. Connors & M.E. Samuels, Plugging the Holes in Environmental Enforcement: The Massachusetts Administrative Penalties Act, in Important New Developments with Respect to Environmental Law 563 (Mass. Cont. Legal Educ. 1987) (New Developments). The enforcement mechanism provided by the administrative penalties act is two-tiered: the general rule is that a party will receive notice of a violation and the opportunity to correct it before any penalty is imposed. *Id.* at 569. However, if a party's conduct or the scope of impact of a violation fits within one of six exceptions to the notice rule, a penalty may be imposed without such notice. *Id.* at 569-570. According to a 1986 DEP guidance document, created soon after G. L. c. 21A, § 16, was enacted in 1985, this structure was intended to serve two fundamental legislative goals: "to catch and correct small

problems before they become large ones," and to "deter and prevent violations before they happen by sending the message that violating the law will be more costly than obeying the law." See Comprehensive Enforcement Policies and Guidelines XI-A (1986) (comprehensive guidelines), as reprinted in New Developments, *supra* at 647.

Words grouped together in a statute must be read in harmony, and we are not free to interpret the wilfulness exception in a way that makes it exceptionally broader than its neighbors. See *Commonwealth* v. *Brooks*, 366 Mass. 423, 428 (1974), citing *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, 333 (1941) ("words in a statute must be considered in light of the other words surrounding them"); *Commonwealth* v. *John T. Connor Co.*, 222 Mass. 299, 302 (1915) ("the scope of doubtful words may be ascertained by reference to the operation of other associated words"). See also 2A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47:16, at 352 353 (7th ed. 2007) (describing interpretive maxim of "noscitur a sociis," i.e., "it is known from its associates"). Cf. *Commonwealth* v. *Scott*, 464 Mass. 355, 359 (2013) (severity of "impairment" necessary to constitute serious bodily injury within meaning of statute best understood in context of statute's other clauses, which allow finding of serious injury where there was "permanent disfigurement" or "substantial risk of death").

In addition to the wilfulness exception, the DEP may forgo notice and assess a penalty if the violation was "part of a pattern of noncompliance and not an isolated instance"; "resulted in significant impact on public health, safety, welfare or the environment"; consisted of the unauthorized disposal or release of hazardous waste, or the unauthorized release of oil;[10]

---

[10]Hazardous waste is any substance or combination of substances "which because of its quantity, concentration, or physical, chemical or infectious characteristics may cause, or significantly contribute to[,] an increase in mortality or an increase in serious irreversible, or incapacitating reversible illness or pose a substantial present or potential hazard to human health, safety or welfare or to the environment." G. L. c. 21C, § 2. Although asbestos may fall within this definition, the DEP and the United States Environmental Protection Agency regulate asbestos separately and not as hazardous waste. See C.B. Myhrum, Hazardous Materials Law, in Massachusetts Environmental Law § 21.10.1, at 21-34 (Mass. Cont. Legal Educ. 3d ed. & Supp. 2012).

involved a false or misleading statement on a form submitted to the DEP; or otherwise consisted of a failure to comply with agreements with the department to remedy or prevent violations. G. L. c. 21A, § 16. These exceptions address conduct that the actor knew to be violative (e.g., because the actor had previously transgressed), or that may have a significant impact on health or the environment, omitting routine and small-scale violations. The conduct is egregious either because it reflects a knowing disregard for agreements or environmental rules, or because the harm posed by such conduct is extraordinary. See *id.*; note 1, *supra.*

Although "willful" may have several meanings when read in isolation, its meaning in any particular statute may be determined from examining the act itself as well as the larger statutory scheme. See *United States* v. *Murdock, supra.* When viewed in the context of the administrative penalties act and the purpose of its enactment, it is apparent that the Legislature intended a "willful" violation of the environmental protection laws administered by the DEP to be a violation that has been committed by a party who knew or, due to his experience or expertise, should have known the operative facts that made his actions a violation of the law. Here, the operative fact was that the shingles at the site likely contained asbestos. Because the Legislature "has spoken with certainty on the topic," *Goldberg, supra* at 632 633, we reject the DEP's interpretation, which requires no such knowledge, as "contrary to the plain language of the statute and its underlying purpose." *Smith* v. *Commissioner of Transitional Assistance*, 431 Mass. 638, 646 (2000).

The statute as a whole is not "capable of more than one rational interpretation." See *Biogen IDEC MA, Inc.* v. *Treasurer & Receiver Gen.*, 454 Mass. 174, 187 (2009). The rule advanced by DEP in the decision accepted by the commissioner is unreasonable because it fails to consider the other exceptions set forth in G. L. c. 21A, § 16, and because it sweeps so broadly as to make nearly all conduct subject to penalty without notice. Cf. *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 490-491 (2009) ("our respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the

language requires such an interpretation"). The structure of the statute, which begins with the general rule and its exceptions, indicates that the Legislature intended that most violators receive notice prior to the assessment of a penalty; the DEP's interpretation excuses the giving of notice to anyone except persons whose actions were entirely accidental.[11] "A basic tenet of statutory construction requires that a statute be 'construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.' " *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004), quoting *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998).[12] Because the DEP's interpretation would come close to making all violators strictly liable for the payment of penalties without notice, it is inconsistent with the clear intent of the Legislature.

Support for this interpretation is also found in the DEP's implementation of the act. Although its current interpretation is incorrect, see note 9, *supra*, its initial interpretation, as expressed

[11]In the Superior Court, the DEP suggested the following hypothetical situations in which the wilfulness exception would not apply: a person tried "to properly seal a container of asbestos but ends up using material that was either mismarked or defective from the manufacturer," or tried "to send asbestos material to an authorized facility, but ends up sending it to an unauthorized facility due to misrepresentations by the facility owner." The DEP analyst suggested in his testimony before the hearing officer that a person who felled a tree that damaged the roof of a house, causing shingles to be dislodged, would fall within the wilfulness exception because his actions in felling the tree were intentional and caused the violation.

[12]Franklin argues that the only valid interpretation of G. L. c. 21A, § 16, is that a person has acted wilfully only if he has knowledge that his conduct will or may constitute a violation of applicable environmental standards. Although some statutes do utilize a similar definition, see, e.g., *Commonwealth* v. *Kingston*, 46 Mass. App. Ct. 444, 445 (1999) (adopting definition of wilfulness from Federal tax evasion cases for State criminal case "for purposes of the tax perjury statute here involved"), in only a few select areas of law does "willfully" require a showing of an intent to violate a known legal duty. See *Commonwealth* v. *Luna*, 418 Mass. 749, 753 (1994) ("the modern definition is that 'wilful means intentional' without making reference to any evil intent"). We will not ascribe a meaning to statutory language that is disfavored in both Federal and State law: that ignorance of the law may be a defense to its violation. See *Inhabitants of Sturbridge* v. *Winslow*, 21 Pick. 83, 86 (1838) ("every man is supposed to know the law . . . [and] he who does an act, which is a plain violation of law, must be presumed to have done it wilfully, and this maxim is necessary to prevent obvious evasions of the law, under a pretence of ignorance or innocent purpose").

in policy documents and in early decisions, aligned with what we conclude is the intent of the statute. See *Commissioner of Revenue* v. *SCA Disposal Servs. of New England, Inc.*, 383 Mass. 734, 737-738 (1981) (nearly contemporaneous administrative interpretation of ambiguous statute is entitled to weight in construing it). In 1988, the DEP first adopted in a published decision the interpretation of the wilfulness exception that it had developed in the 1986 comprehensive guidelines.[13] The comprehensive guidelines provide as examples of when a violation might be considered wilful the filing of a report "which the reporting party must have known was inaccurate"; intentionally filling or altering wetlands; violating the terms of a prior agreement with the agency; and "failing to notify [DEP] of asbestos demolition work." Comprehensive guidelines, *supra* at X1-B(2), as reprinted in New Developments, *supra* at 652. Although the latter example does not state whether the violator must be aware of the facts that make his intentional acts a violation — i.e., that the structure being demolished contains asbestos — the other examples in the guidance document support the conclusion that such knowledge was contemplated and is necessary to make a violation wilful.[14]

We conclude that the wilfulness exception in G. L. c. 21A,

---

[13]See Matter of Dynamics Research Corp., 6 Mass. Envtl. L. Rep. 1261, 1265 (1988). In that case, the assessment of a penalty without notice, against a company that had discharged industrial wastewater into the ground water, knowing that there were likely to be hazardous chemicals within the discharge and that it needed to obtain a permit, was affirmed.

[14]The DEP advances the additional argument on appeal that its interpretation of the statute is reasonable because the Clean Air Act and other statutes administered by the DEP are public welfare statutes that punish behavior rather than intent, and are akin to strict liability crimes in that no intent or knowledge need be proven, including knowledge of the operative facts or knowledge of the law and an intent to violate it. As the DEP argues, when enforcement is sought by the bringing of criminal charges pursuant to provisions of the Clean Air Act and similar criminal statutes now enforced by the DEP, a showing of knowledge of the law or of intent to violate the law is not a requirement for a finding of guilt. See, e.g., G. L. c. 111, § 142A; G. L. c. 21E, § 5. We agree that, "[w]hen statutes impose punishment out of considerations of public policy, lack of knowledge of the law or of the fact that the law has been violated does not exonerate the person who may have unwittingly violated the statute. In such instances, the old chestnut applies that ignorance of the law is no excuse." *Commonwealth* v. *Belanger*, 30 Mass. App. Ct. 31, 33 (1991) (criminal statute barring hiring persons under eighteen

§ 16, requires that the violator undertook intentionally the act that caused the violation, and that the violator either knew or should have known at least the facts that made the act a violation of the law. That being said, there is no requirement that a violator either was aware of the applicable environmental laws or intended to violate those laws. See note 14, *supra*. See also *Commonwealth* v. *Belanger*, 30 Mass. App. Ct. 31, 33 (1991) ("We also understand the practical difficulty an employer may have in finding the way to and through the statutes of Massachusetts. . . . That difficulty, however, is not peculiar to the statutory scheme in question but pertains to the whole vast underbrush of statutes and regulations which govern the lives of the inhabitants of the Commonwealth or the country").

*Review under G. L. c. 30A, § 14.* On review of an agency decision, a court may "affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision . . . if it determines that the substantial rights of any party may have been prejudiced . . . ." G. L. c. 30A, § 14. See *Attorney Gen.* v. *Commissioner of Ins.*, 450 Mass. 311, 318 (2008). Under this standard, when an agency's decision is based on an error of law, a reviewing court may choose to leave in place the overall disposition of a case, but on different grounds than those relied upon by the agency. Because the hearing officer's findings, supported by substantial evidence, were that Franklin's agents knew or should have known that the shingles could contain asbestos, the agency's disposition in this case is affirmed, on grounds different from those relied on by the DEP.

*Conclusion.* The judgment of the Superior Court is vacated and set aside, and the matter is remanded to the Superior Court, where judgment shall enter for the DEP.

*So ordered.*

years of age to operate automobiles did not require knowledge of law and intent to violate it). See *Commonwealth* v. *Clemmey*, 447 Mass. 121, 131 n.12 (2006) (criminal charge for violation of wetlands protection statute did not require showing of knowledge of law or intent to violate it). But this construction is incompatible with the intent of G. L. c. 21A, § 16, which allows the imposition of civil administrative penalties in place of the criminal sanctions provided for in the environmental protection statutes, and is invalid.