## GROUP INSURANCE COMMISSION *vs.* LABOR RELATIONS COMMISSION.

Suffolk. October 18, 1979. — November 29, 1979.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Practice, Civil,* Parties. *Moot Question. Administrative Law,* Standing, Judicial review. *Commonwealth,* Officers and employees, Collective bargaining. *Group Insurance Commission. Insurance,* Group.

A State agency is an "aggrieved person" for purposes of judicial review of State administrative proceedings under G. L. c. 30A, § 14, where those proceedings require interpretation of the statutory power and authority of that agency. [755-757]

A complaint by the Group Insurance Commission challenging a decision of the Labor Relations Commission which required that the Commissioner of Administration notify all State employees that the Commonwealth would bargain over payroll withholding for group insurance premiums was not moot on the ground that it did not require any diminution in group insurance funds. [757-758]

Matters relating to the recoupment or adjustment of inadequate group insurance premiums in the administration of G. L. c. 32A are not within the scope of public employee bargaining. [758-759]

CIVIL ACTION commenced in the Superior Court on May 9, 1978.

The case was heard by *Ford,* J., on a motion to dismiss.

*Christopher H. Worthington,* Assistant Attorney General, for the plaintiff.

*Frederick V. Casselman* for the defendant.

KASS, J. The question in dispute between two State agencies, the Group Insurance Commission (GIC) and the Labor Relations Commission, is whether matters relating to the administration of the group insurance program for employees of the Commonwealth are within the scope of public employee bargaining.

In anticipation of the passage of legislation which would increase the Commonwealth's share of premium costs for group insurance, the GIC directed all payroll reporting locations to reduce the amounts withheld from employees' paychecks beginning October 1, 1977, to reflect the higher ratio of contribution by the Commonwealth. The GIC accompanied this instruction with a proviso that if the legislation authorizing the higher Commonwealth contribution were not enacted, the adjustments would have to be recouped. A notice issued to all State employees that if the requisite legislation failed to pass, "we shall revoke all adjustments to restore the State's share as most recently authorized by Chapter 300 of the Acts of 1977."

In fact, the authorizing legislation, to which a controversial rider had been appended, did fail to pass, and the GIC notified all payroll stations that what it had given, it now had to take away in a deduction from February paychecks. For this it was not blessed. Several unions representing State employees filed complaints of prohibited practice with the Labor Relations Commission. Following a hearing, the Labor Relations Commission issued a decision to the effect that the February recoupment of group insurance deductions provisionally not made from October through December of the previous year constituted unilateral action by an employer who failed to bargain collectively about a mandatory subject in violation of G. L. c. 150E, §§ 10(*a*)(1) and 10(*a*)(5). Recognizing the futility of nullifying the February payroll deductions,[1] the Labor Relations Commission contented itself with a cease and desist order directed to the Commissioner of Administration requiring the Common-

---

[1] No party disputes the necessity of recouping the deductions not made in October through December. What the unions and the Labor Relations Commission contend is that the Commonwealth had an obligation to bargain about whether the recoupment would be in one lump sum – approximately $22 – or would be spread over several paychecks.

wealth to bargain in the future over the method of recovery of underpayment by employees of group insurance premiums.

From that order the GIC petitioned for review under G. L. c. 30A, § 14, and for a declaratory judgment as to the jurisdiction of the Labor Relations Commission over the subject matter. The Commissioner of Administration intervened. A judge of the Superior Court dismissed the action pursuant to Mass.R.Civ.P. 12(b), 365 Mass. 755 (1974), and from that judgment the GIC appealed. The judge's order does not state the ground for dismissal and we, therefore, deal first with a preliminary issue of standing raised before him. Since we decide that issue in favor of the GIC, we then shall consider the central question of the jurisdiction of the Labor Relations Commission over the GIC's action.

1. *The standing of the Group Insurance Commission to complain.* After it investigated the complaints of the unions, in accordance with G. L. c. 150E, § 11, the Labor Relations Commission issued its own complaint of prohibited practice and held a formal hearing. At that proceeding the hearing officer allowed the GIC to intervene, although the complaint had been directed against the Commonwealth, represented for purposes of collective bargaining by the Commissioner of Administration. It is the position of the Labor Relations Commission that it allowed the GIC to intervene for the limited purpose of supporting its position that the labor relations proceeding constituted an impermissible interference with the statutory authority of the GIC. In its decision, which necessarily came to grips with the very issue the GIC had raised, the Labor Relations Commission said, "In our decision in this matter, we make no finding of liability against the GIC and issue no order running against that organization. We consequently deny the Motion to Intervene, insofar as it would make the GIC a party to this case."

On this metaphysical platform, the Labor Relations Commission constructs its argument that the GIC is not

an aggrieved person and is, therefore, without standing to seek judicial review of the Labor Relations Commission's order. Any interest in the outcome of a proceeding, to be sure, does not assure the right to intervene. For example, the United States Supreme Court has held that the customer of a bank lacks standing to protest a subpoena of records of his bank transactions because they are the bank's papers, not his. *United States* v. *Miller,* 425 U.S. 435, 440-441 (1976). And the protection of an existing business from competition does not afford a basis to challenge a zoning determination by a board of appeals. *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 429-430 (1949). *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. 210, 213-215 (1975). Common to such cases is that the interest of the person desiring entry into the proceedings is solely derivative.[2] In the instant case, by contrast, the core of the dispute is the degree of statutory independence of the GIC. Not surprisingly, the record reflects that the Labor Relations Commission obtained a large measure of its evidence from testimony of the Executive Secretary of the GIC, and the decision of the Labor Relations Commission is heavily larded with discussion of the functions of the GIC under G. L. c. 32A. Indeed, it is the Commissioner of Administration whose role is secondary and indirect, since he acted on instructions from the GIC. The determination whether a party is "aggrieved" does not turn on whether that party is directly commanded by the order of an administrative agency. *American Can Co.* v. *Milk Control Bd.,* 313 Mass. 156, 160 (1943). We hold that a State agency is an "aggrieved person" for purposes of judicial review of State adminis-

---

[2] Having a derivative interest is of itself not a disqualification for "person aggrieved" status. See e.g, *Truax* v. *Raich,* 239 U.S. 33, 39 (1915) (right of an alien to challenge a statute requiring employers to hire a large percentage of citizens), and *American Can Co.* v. *Milk Control Bd.,* 313 Mass. 156, 160 (1943) (right of manufacturer of milk cartons to challenge an order requiring retailers to make a surcharge on milk sold in cartons).

trative proceedings, G. L. c. 30A, § 14, where those proceedings require interpretation of the statutory power and authority of that agency. See *School Comm. of Hanover* v. *Curry,* 3 Mass. App. Ct. 151, 156 (1975), *S.C.,* 369 Mass. 683 (1976).

As an alternative to a petition for judicial review of administrative action, the GIC asked for declaratory relief under G. L. c. 231A. The claim of authority by the Labor Relations Commission to act in connection with directives of the GIC created an actual controversy "caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter." *School Comm. of Cambridge* v. *Superintendent of Schools,* 320 Mass. 516, 518 (1946). *South Shore Natl. Bank* v. *Board of Bank Incorporation,* 351 Mass. 363, 368 (1966). In such circumstances, a motion to dismiss should be denied, and the judge should make an adjudication of rights, even if the judge disagrees with the proposition for which the plaintiff contends. *Franklin Fair Assn.* v. *Secretary of the Commonwealth,* 347 Mass. 110, 113 (1964). *Jewel Companies* v. *Burlington,* 365 Mass. 274, 277 (1974).

2. *Mootness.* Because its order did not actually require any diminution in group insurance funds, the Labor Relations Commission argues that the GIC's complaint is moot. As a matter of law, the position of the Labor Relations Commission is unsound because the jurisdictional question whether it acted in excess of its authority as regards the directives of the GIC is of a type always open to review, *School Comm. of W. Springfield* v. *Korbut,* 373 Mass. 788, 792 (1977), and because the question presented is capable of repetition, yet evading review. *Wolf* v. *Commission of Pub. Welfare,* 367 Mass. 293, 298 (1975). *Ottaway Newspapers, Inc.* v. *Appeals Court,* 372 Mass. 539, 550 (1977). As a matter of fact, the position of the Labor Relations Commission

is also unsound because its order required the Commissioner of Administration to notify all State employees "represented by the Alliance" that, "We [the Commonwealth] will bargain upon request with the Alliance over payroll withholding for group insurance premiums, and will not take action unilaterally in these matters in the future." In terms of the asserted independence of action of the GIC, it is fair to observe that the order drinks very deep, and is far from moot.

3. *Are group insurance payroll deductions within the scope of public employee bargaining?* Chapter 32A has as its purpose "to provide a program of group life insurance, group accidental death or dismemberment insurance for certain persons in the service of the commonwealth, and group general or blanket hospital, surgical, medical, dental and other health insurance for such persons and their dependents." G. L. c. 32A, § 1, as amended by St. 1977, c. 958, § 1.[3] Under the provisions of G. L. c. 32A, § 4, the GIC (established by G. L. c. 32A, § 3) is empowered to negotiate and purchase insurance contracts. Necessarily this involves establishing premium charges and issuing instructions for the appropriate amounts to be withheld from paychecks, for which authority appears in G. L. c. 32A, § 8. That section, as amended through St. 1975, c. 330, also requires that "[a]ll amounts withheld from an employee's salary or wages as provided in this section[4] . . . shall be forwarded

---

[3] The 1977 legislation did not affect § 1 in any way material to this decision.

[4] The brief of the Labor Relations Commission calls to attention that under § 8, not more than twenty-five percent (or less if so provided by the most recent appropriation act) of a monthly premium shall be withheld from each salary payment. The February recoupment is likely to have put the February group insurance withholding over the ceiling, but since this was pursuant to a pre-announced plan which envisioned a withholding adjustment if certain things did not happen, we think there has been no failure to comply with § 8. Were this not so, correction of a clerical error at a payroll payment station could rise to a statutory violation.

by the department ... responsible for the payment of employee salaries ... to the [Group Insurance C]ommission." The ratio of the Commonwealth's contribution is entirely statutory; the functions of the GIC so far as premium collection and payment are concerned are ministerial.

We have before us, therefore, a well defined statutory policy: the GIC negotiates insurance contracts on behalf of employees of the Commonwealth; these contracts necessarily include premium rates; the GIC calculates, and instructs payroll stations, what to withhold from paychecks; the amounts withheld are remitted to the GIC; and the GIC makes the premium payments which keep the insurance policies in force. A break in this pattern, i.e., if premium collection directives were subject to bargaining, might well result in an inability by the GIC to pay premiums when due. We are of the opinion, therefore, that to make the collection system a subject of bargaining offends against the statutory scheme, rendered exclusive by G. L. c. 32A. *Watertown Firefighters Local 1347* v. *Watertown,* 376 Mass. 706, 711 (1978). Nor does the characterization by the Labor Relations Commission of the withholding issue as "compensation" throw it into the bargaining arena if that in substance "defeats a declared legislative purpose." *Id.* at 714. See also *School Comm. of Holyoke* v. *Duprey, ante* 58, 65-66 (1979). State employees may, to the extent consistent with their collective bargaining agreement with the Commonwealth, negotiate with the Commonwealth about changes in the appropriations legislation touching on health and life insurance benefits, cf. *Kerrigan* v. *Boston,* 361 Mass. 24, 27-28 (1972), and *Brooks* v. *School Comm. of Gloucester*, 5 Mass. App. Ct. 158, 160 (1977), but that is a matter distinct from negotiating about the operation of the existing legislation.

On the petition for review, the judgment is reversed and a judgment is to enter vacating the order of the

Labor Relations Commission as based on an error of law; regarding the request for declaratory relief, a declaration is to enter that matters relating to the recoupment or adjustment of inadequate group insurance premiums in the administration of G. L. c. 32A are not within the scope of public employee bargaining.

*So ordered.*