GROUP INSURANCE COMMISSION vs. LABOR RELATIONS
COMMISSION.

Suffolk. April 10, 1980. — July 24, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

Practice, Civil, Parties. Administrative Law, Standing, Judicial review.
Commonwealth, Officers and employees, Collective bargaining. At-
torney General. Group Insurance Commission.

In an action for review of a prospective order by the Labor Relations
Commission requiring the Commonwealth, through the Commission-
er of Administration, to bargain with an employee organization repre-
senting certain State employees over the method of recoupment of
overpayment of group insurance premiums, the Group Insurance
Commission was not a party aggrieved by the order of the Labor Rela-
tions Commission and therefore had no standing to challenge it.
[204-207]

CIVIL ACTION commenced in the Superior Court on May
9, 1978.

The case was heard by Ford, J., on a motion to dismiss.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

Frederick V. Casselman for the defendant.

Christopher H. Worthington, Assistant Attorney General,
for the plaintiff.

HENNESSEY, C.J. The Group Insurance Commission
(GIC), established pursuant to G. L. c. 32A, is empowered
to enter into contracts with insurance carriers for the pur-
pose of providing group life, accident and health insurance
coverage for certain classes of active and retired State em-
ployees and their dependents. Total premium cost for
group insurance coverage is determined by the contracts
awarded by the GIC. Legislation restricts the percentage
contribution towards total premium costs which may be

made by the State.  Funds are appropriated to the accounts
of the GIC to cover the State share of premium costs.  In ad-
dition, the GIC administers a payroll withholding system
through which the employee share of the premium is collect-
ed.  See G. L. c. 32A, § 8.  The GIC is responsible for deliv-
ering the premiums to the carriers in a timely fashion.

In anticipation of the passage of legislation which would
increase the Commonwealth's share of premium costs for
group insurance, the GIC directed all payroll reporting
locations to reduce the amounts withheld from employees'
paychecks apparently beginning October 1, 1977,[1] to reflect
the higher ratio of contribution by the Commonwealth.  The
GIC accompanied this instruction with a proviso that, if the
legislation authorizing the higher Commonwealth contribu-
tion were not enacted, the adjustments would have to be
recouped from the employees.

In fact, the authorizing legislation, to which a controver-
sial rider had been appended, did fail to pass.  On January 6,
1978, the GIC issued a directive to the various payroll report-
ing locations ordering that the Commonwealth's overpay-
ment of insurance premiums be deducted from the February
paychecks.

On January 13 and 18, 1978, complaints of prohibited
practice under G. L. c. 150E were filed with the Labor
Relations Commission by the AFSCME-SEIU, AFL-CIO
(Alliance), an employee organization representing certain
State employees for collective bargaining purposes.  The
complaints challenged the action of the Commonwealth in
making involuntary deductions from the pay of employees
represented by the Alliance without first bargaining with the
Alliance as allegedly required by G. L. c. 150E.  The Labor
Relations Commission investigated the complaints and on
January 31 issued a formal complaint against the Common-

---

[1] Although we have not been able to verify absolutely the dates on
which the reduced deductions were made, it is clear that the deductions
were provisionally reduced for some period prior to the rejection of the
proposed legislation.  As no controversy exists as to the exact dates, we
may accept, for purposes of this opinion, the dates given.

wealth of Massachusetts in the person of the Commissioner of Administration, and ordered a hearing on the complaint.

The GIC filed a motion to intervene and a motion to dismiss. Although not named as a respondent to the complaint, the GIC was permitted to intervene for the limited purpose of introducing evidence in support of its position that the complaint issued by the Labor Relations Commission interfered with the statutory independence of the GIC. Following the hearing, the Labor Relations Commission issued a decision to the effect that the February recoupment of group insurance deductions provisionally reduced from October through December of the previous year[2] constituted unilateral action by an employer who failed to bargain collectively about a mandatory subject in violation of G. L. c. 150E, §§ 10 (a) (1) and 10 (a) (5). Because the Alliance did not dispute the necessity for some form of increased employee contribution to compensate for the Commonwealth's earlier overpayment, the Labor Relations Commission avoided the administrative inconvenience and expense that would have been occasioned by ordering the Commonwealth to refund the deducted money to the employees. Instead the Labor Relations Commission issued a cease and desist order directed to the Commissioner of Administration requiring the Commonwealth to bargain in the future over the method by which the Commonwealth would recover its excess contribution to employees' group insurance premiums.

From that order the GIC petitioned the Superior Court for review under G. L. c. 30A, § 14, and for a declaratory judgment under G. L. c. 231A. The Commissioner of Administration intervened. A judge of the Superior Court dismissed the action pursuant to Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974), and the GIC appealed from that judgment to the Appeals Court. The Appeals Court reversed the Superior Court, vacating the order of the Labor Relations Commission and entering a declaration that matters relating to the recoupment or adjustment of inadequate

[2] See note 1, *supra*.

group insurance premiums in the administration of G. L. c. 32A are not within the scope of public employee bargaining. 8 Mass. App. Ct. 753, 759-760 (1979). This court granted further appellate review.

We conclude that the Superior Court properly dismissed the complaint. We therefore reinstate the prospective order of the Labor Relations Commission requiring the Commonwealth, through the Commissioner of Administration, to bargain with the Alliance over the method of recoupment of alleged overpayment of group insurance premiums.

The order of the Superior Court judge dismissing the action pursuant to Mass. R. Civ. P. 12 (b) does not state the ground for dismissal. We therefore begin with an examination of the preliminary issue of the GIC's standing as raised before the judge. Because we decide this issue against the GIC we need reach none of the other grounds for dismissal advanced by the Labor Relations Commission, nor do we make any pronouncement on the merits of any issue raised by the parties.

Review of adjudicatory decisions of administrative agencies may be sought only by a "person or appointing authority aggrieved by a final decision . . . ." G. L. c. 30A, § 14.[3] In order to maintain an action for review, a party must be aggrieved in a "legal sense" and show that "substantial rights" have been "prejudiced." *Duato* v. *Commissioner of*

---

[3] The GIC's petition for judicial review to the Superior Court indicates that the action was brought pursuant to not only the State Administrative Procedure Act, G. L. c. 30A, but also the Declaratory Judgment Act, G. L. c. 231A. The Labor Relations Commission's motion to dismiss raised defenses under both statutes. However, in its appeal to the Appeals Court the GIC appeared to abandon its G. L. c. 231A claims and rely exclusively on G. L. c. 30A. In any event our reasoning would not change by viewing this case as an action for declaratory relief under G. L. c. 231A. "In order for a court to entertain a petition for declaratory relief, an 'actual controversy' sufficient to withstand a motion to dismiss must appear on the pleadings. G. L. c. 231A, § 1. Even if there is an actual controversy, the particular plaintiff must demonstrate the requisite legal standing to secure its resolution." *Massachusetts Ass'n of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292 (1977), quoting from *Hillman* v. *Second Bank-State St. Trust Co.*, 338 Mass. 15, 19 (1958).

*Pub. Welfare*, 359 Mass. 635, 637-638 (1971). Our examination of the GIC's claim that it is a party aggrieved by the decision of the Labor Relations Commission begins with the actual orders of the Labor Relations Commission, viz.: "The Commonwealth of Massachusetts shall cease and desist from failing to and refusing to bargain in good faith with the Alliance over the method of recovery of alleged overpayment of group insurance premiums from the pay of employees represented by the Alliance.

"In order to effectuate the purposes of the law, the Commonwealth is hereby ordered to take the following affirmative action:

"1. Distribute to employees represented by the Alliance, in the same manner as payroll checks are distributed to employees, the attached Notice to Employees.[4]

"2. Upon request, bargain in good faith with the Alliance, to resolution or impasse, over the method of recovery of alleged overpayment of group insurance premiums.

"3. Notify the Commission within ten (10) days of receipt of this Decision and Order of the steps taken to comply therewith."

This order manifestly runs to the Commissioner of Administration and not to the GIC. By its terms the order designates "the Commonwealth" as its object. The "Findings of Fact" included in the Decision and Order of the Labor Relations Commission state that "[t]he Commission[er] of

---

[4] This notice states, inter alia, "The Labor Relations Commission has determined that this action [i.e., the Commonwealth's recoupment of underpayments via involuntary payroll deductions without bargaining] was a prohibited practice within the meaning of G. L. c. 150E. As the amounts deducted were owed by the employees, return of the deductions has not been ordered. . . .

"We acknowledge our obligation to bargain collectively with the Alliance over 'wages, hours, standards of productivity and performance, and any other terms and conditions of employment.'

"We will not restrain, coerce or intimidate the Alliance or the employees whom it represents in the exercise of their rights to bargain collectively.

"We will bargain upon request with the Alliance over payroll withholding for group insurance premiums, and will not take action unilaterally in these matters in the future."

Administration is the representative of the Commonwealth for all purposes relative to this matter." Moreover, the "Findings of Fact" explain that "[t]he Hearing Officer allowed the Motion to Intervene filed by the GIC only to the extent of permitting that agency to introduce evidence at the hearing in support of its claim that the Complaint of Prohibited Practice issued by the Commission interfered with the statutory authority of the GIC. The complaint alleged a violation by the Commonwealth, and was directed only against the Commonwealth as it is represented for the purposes of collective bargaining by the Commissioner of Administration. In our decision in this matter, we make no finding of liability against the GIC, and issue no order running against that organization. We consequently deny the Motion to Intervene, insofar as it would make GIC a party to this case."

It is clear that the GIC is not directly aggrieved by the decision and order of the Labor Relations Commission. The GIC is not ordered to do, or refrain from doing, anything. Moreover, it has suffered no pecuniary injury because it has recovered all money owed it. See *Murray* v. *Massachusetts Bonding & Ins. Co.*, 283 Mass. 15, 16 (1933). The only remaining question is whether the GIC has suffered a sufficient indirect injury to accord it aggrieved status for the purpose of seeking review of the agency decision. See *American Can Co.* v. *Milk Control Bd.*, 313 Mass. 156, 160 (1943).

Not every person whose interests might conceivably be adversely affected is entitled to review. *Shaker Community, Inc.* v. *State Racing Comm'n*, 346 Mass. 213 (1963). "[I]n many, if not most, circumstances, the injury complained of may be too remote to make the party seeking review a 'person aggrieved.'" *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 46 (1977). In the instant case the alleged injury to the GIC from the Labor Relations Commission's order that the Commissioner of Administration bargain with the Alliance is remote and speculative at best. The Commissioner of Administration, in bargaining with the Alliance, will of course be constrained

to act consistently with his other responsibilities, e.g., to the GIC. If the Commissioner of Administration impinges on the authority of the GIC, the GIC's complaint would be to the Commissioner of Administration, not to the Labor Relations Commission.

The Group Insurance Commission also claims to be aggrieved by the "erroneous implication" in the decision of the Labor Relations Commission that group insurance coverage may be a subject of collective bargaining. This allegation is insufficient for several reasons. First, "implications" are hardly appealable. Second, the chimerical nature of this alleged implication is made clear by the following excerpts from the decision of the Labor Relations Commission. "We hold only that this narrow aspect of the fact pattern presented by this case constitutes a mandatory subject of bargaining. . . . Nor do we reach any issue regarding the negotiability of decisions regarding group insurance carrier or coverage for state employees." Third, GIC cannot be harmed until and unless the employer and the union attempt to negotiate coverage. Even at that point, GIC would be able to vindicate its authority by deciding whether to comply with the wishes of the parties and letting its decision be tested in court.

The Group Insurance Commission also contends that it is aggrieved by the "Notice to Employees" which the Labor Relations Commission ordered the Commissioner of Administration to distribute to State employees because the notice goes beyond the scope of the case by stating that the Commissioner of Administration "will bargain upon request with the Alliance over payroll withholding for group insurance premiums." The actual order merely requires the Commissioner of Administration to "bargain . . . with the Alliance . . . over *the method of recovery of alleged overpayment* of group insurance premiums" (emphasis supplied) and not over "payroll withholding for group insurance premiums" in general. Concededly, the imprecise language quoted from the Notice to Employees, taken alone, appears to paint an overly broad picture of the scope of the order of

the Labor Relations Commission. However, when the notice is read, as it must be, in conjunction with the text of the order itself, it is clear that the Labor Relations Commission is not requiring the Commissioner of Administration to bargain over anything other than the method of recoupment of alleged overpayment of group insurance premiums. Clearly, if there is an apparent conflict between the language of the order and that contained in the notice to employees (the obvious purpose of which is merely to inform the employees of the contents of the order) then it is to the text of the order alone that one must look for resolution. Moreover, although no clarification is needed of the narrow and precise language of the order which we have quoted above, it should be noted that the facts before the Labor Relations Commission raised only the issue of bargaining over the method of recovery of alleged overpayment of group insurance premiums. Thus, it is clear that no decision could have been made by the Labor Relations Commission concerning the question of bargaining over payroll withholding for group insurance premiums in general. Therefore, we perceive no legally cognizable harm flowing to the GIC from the imprecise language of the notice to employees.

The GIC further attempts to establish standing by the following oblique logic. The Commissioner of Administration is obviously a party aggrieved by the decision and would have standing to appeal but has chosen not to do so. The Attorney General now appears pursuant to his dual responsibility to litigate in behalf of agencies whose actions are called into question and to represent the public interest by appearing in proceedings in which the Commonwealth is a party or is interested. The GIC should be heard, through the Attorney General, because the interests of the Commonwealth cannot otherwise be properly protected since the Commissioner of Administration has failed to secure judicial review of the decision of the Labor Relations Commission.

The fact that the Attorney General comes before this court as representative of the GIC does not, in and of itself, lend any special weight to the position of the GIC. The GIC seems to suggest that the Commissioner of Administra-

tion should have appealed and now the Attorney General should be allowed to remedy the Commissioner's failure to carry out that duty. However, any appeal by the Attorney General under that theory should have been made on behalf of the Commissioner of Administration. See *Feeney* v. *Commonwealth*, 373 Mass. 359 (1977) (affirming authority of Attorney General to prosecute appeal over expressed objections of State officers he represents). Our conclusion that the GIC lacks standing because it has suffered no legally cognizable injury is not altered by its argument which focuses on injury suffered by another party — the Commissioner of Administration. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 429-430 (1949) (protection of existing business from competition does not afford basis to challenge zoning determination by board of appeals); *Monize* v. *Frisoli*, 6 Mass. App. Ct. 50, 51 (1978) (in suit by injured pedestrian against landlord and tenant where verdict was directed in favor of tenant at close of plaintiff's case and jury found against landlord, landlord lacks standing to appeal from directed verdict in favor of tenant); *United States* v. *Miller*, 425 U.S. 435, 440-441 (1976) (customer of bank lacks standing to protest subpoena of records of his bank transactions because they are bank's papers, not his); *Torres* v. *Toledo*, 586 F.2d 858 (1st Cir. 1978) (where Commonwealth of Puerto Rico assumed responsibility for defense of suit against police superintendent under 42 U.S.C. § 1983 and after losing in Federal District Court assumed responsibility for judgment and chose not to appeal, retired superintendent lacks sufficient stake in controversy to appeal in his individual capacity).

Because the GIC has pointed to no legally cognizable injury, either direct or indirect, to its rights or pecuniary interests, we conclude that it is not a party aggrieved by the decision and order of the Labor Relations Commission and therefore has no standing to challenge the decision and order. Accordingly, we affirm the judgment of the Superior Court dismissing the GIC's complaint and thereby reinstate the order of the Labor Relations Commission.

*So ordered.*