548                                    461 Mass. 548 (2012)

Board of Health of Sturbridge *v.* Board of Health of Southbridge.

## Board of Health of Sturbridge & others[1] *vs.* Board of Health of Southbridge & another.[2]

Worcester. October 4, 2011. - February 22, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Practice, Civil,* Appeal, Notice of appeal, Enlargement of time, Parties, Standing. *Administrative Law,* Intervention, Substantial evidence, Judicial review. *Municipal Corporations,* Board of health. *Board of Health.*

This court concluded that Mass. R. A. P. 4 (a) authorized a Superior Court judge's allowance of the plaintiffs' motion to enlarge the time to file a notice of appeal, where, although the plaintiffs did not move to enlarge until more than ninety days after entry of the Superior Court judgment, they required only a four-day extension to render timely their notice of appeal, which they had filed with the clerk shortly after the entry of judgment. [552-554]

This court concluded that citizen groups (plaintiffs) lacked standing to appeal from a decision of the defendant town board of health (board) approving a minor modification to the site assignment for an existing landfill and related processing facility in that town under G. L. c. 111, § 150A, where, although the plaintiffs qualified as interveners before the board, the record of the proceeding (a nonadjudicatory proceeding involving claims of damage to the environment, in which the plaintiffs acquired party status automatically and not through an individualized determination by the board) did not support a conclusion that any of the plaintiffs would suffer prejudice to their individual rights [555-562]; at any rate, their substantive challenges to the decision lacked merit [562-564].

Civil action commenced in the Superior Court Department on July 8, 2008.

A motion to dismiss was heard by *Leila R. Kern,* J., and the case was heard by *Janet Kenton-Walker,* J., on a motion for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

[1]Twenty-eight ten-citizen groups formerly represented by Kirstie L. Pecci, Ann Fenwick-Beinema, Larry Beinema, Wil Gallien, James Sottile, Lynne Simonds, and John Pulawski.

[2]Southbridge Recycling and Disposal Park, Inc.

*Kirstie L. Pecci* for twenty-eight ten-citizen groups.

*Robert C. Kirsch* for Southbridge Recycling and Disposal Park, Inc.

*Sarah Turano-Flores,* for board of health of Southbridge, was present but did not argue.

The following submitted briefs for amici curiae:

*Christopher D. Ahlers,* of Vermont, for Toxics Action Center.

*Thomas A. Mackie* for National Solid Wastes Management Association.

*Martha Coakley,* Attorney General, *& Sookyoung Shin,* Assistant Attorney General, for the Commonwealth.

*Shanna Cleveland, Peter Shelley, & Margaret Van Deusen* for Conservation Law Foundation & another.

BOTSFORD, J. In July of 2008, the plaintiffs filed an appeal in the Superior Court from a decision of the defendant board of health of Southbridge (board) approving a "minor modification" to the site assignment for an existing landfill and related processing facility in that town under G. L. c. 111, § 150A (§ 150A).[3] The plaintiffs brought their appeal pursuant to G. L. c. 30A, § 14. In response to a motion to dismiss, two judges in the Superior Court ruled that as parties before the board, the plaintiffs had standing to bring their complaint for judicial review to the Superior Court. However, the second judge (motion judge) concluded that the plaintiffs' challenges to the board's decision failed on the merits. Final judgment entered on December 16, 2009, affirming the board's decision.

We transferred the plaintiffs' appeal from the judgment to this court on our own motion to consider in particular the issue of the plaintiffs' standing to seek judicial review in the Superior Court of the board's decision. However, there is a threshold issue whether the appeal must be dismissed because the plaintiffs' notice of appeal was not timely filed in the Superior Court. For the reasons we shall discuss, we conclude that the Superior

---

[3]The original plaintiffs in the Superior Court included the board of health of Sturbridge, the twenty-eight ten-citizen groups, and the individuals named in note 1, *supra.* Two weeks after the complaint was filed, the board of health of Sturbridge voluntarily dismissed its claims with prejudice and is not a party to this appeal. The plaintiffs indicate in their brief that Ann Fenwick-Beinema and Larry Beinema also are not parties to the appeal.

Court judge had authority to allow the plaintiffs' motion to extend the time for filing their notice of appeal. With respect to the other issues raised, we conclude that on the record before the court, (1) the plaintiffs lacked standing to seek judicial review of the board's decision in the Superior Court; and (2) the plaintiffs' substantive challenges to the decision lack merit.[4]

1. *Background.* The basic background facts are not in dispute.[5] The defendant Southbridge Recycling and Disposal Park, Inc. (SRDP), operates a landfill and an associated processing facility at 165 Barefoot Road in Southbridge. On February 27, 2008, SRDP filed an application for a minor modification of its existing site assignment with the board pursuant to § 150A and 310 Code Mass. Regs. §§ 16.00 (2001), the implementing regulations of the Department of Environmental Protection (department). At that time, SRDP was operating both the landfill and the processing facility under a site assignment decision of the board issued in April, 1999.[6] The minor modification SRDP requested had two components: (1) to reallocate a specified number of tons per year of waste from the processing facility to the landfill, thereby increasing the volume of waste accepted by the landfill and decreasing by a corresponding amount the volume of waste accepted by the processing facility; and (2) to allow the landfill to accept waste from the processing facility regardless of its geographic origin.

Between March 27 and May 21, 2008, the board held a public hearing on SRDP's modification request. On March 27, the first of what turned out to be eleven hearing dates, the hearing officer admitted the plaintiff ten-citizen groups (citizen groups) as "Parties" to the hearing with the right to participate fully in it. See 310 Code Mass. Regs. §§ 16.20(9), (10)(e). Through their counsel, the citizen groups did so by presenting and cross-examining witnesses, presenting and responding to motions,

---

[4]We acknowledge the amicus briefs of the Attorney General, National Solid Wastes Management Association, Conservation Law Foundation, Toxics Action Center, and Charles River Watershed Association.

[5]The facts stated here are taken primarily from the decision of the second Superior Court judge (motion judge) on the plaintiffs' motion for judgment on the pleadings.

[6]The decision had been appealed to the Superior Court, and the matter was settled pursuant to an agreement for judgment in June, 2000.

making opening and closing statements to the board's hearing officer, and submitting a proposed decision. At the hearing, approximately sixty witnesses testified, and seventy-two exhibits were admitted as well as seven chalks. The board issued its decision on June 9, 2008. It granted SRDP's application for a minor modification of the site assignment, but with fifty-eight specific conditions imposed. The plaintiffs timely filed a complaint for judicial review in the Superior Court on July 8, 2008, naming the board and SRDP as defendants.[7]

*2. Timeliness of the plaintiffs' notice of appeal. a. Facts.* The Superior Court judgment entered on December 16, 2009. Under Mass. R. A. P. 4 (a), as amended, 430 Mass. 1603 (1999), the plaintiffs were required to file their notice of appeal in the Superior Court within thirty days of that date.[8] The plaintiffs apparently mailed their notice of appeal to the Superior Court on January 15, 2010, but the court did not receive or docket the notice until January 19 (January 18 was a holiday), more than thirty days after the date of the judgment.

On February 3, 2010, SRDP and the board jointly moved to strike the notice of appeal as untimely filed. At the hearing on the defendants' motion, held on March 23, the motion judge permitted the plaintiffs' counsel to make an oral motion to enlarge the time to file the notice of appeal under Mass. R. A. P. 4 (c), as appearing in 378 Mass. 928 (1979).[9] On April 1, the motion judge allowed the motion to enlarge and denied the defendants' motion to strike. The plaintiffs' appeal was entered in the Appeals Court on May 14. On May 17, the defendants

---

[7] We set out additional background facts in connection with the specific issues discussed *infra.*

[8] Rule 4 (a) of the Massachusetts Rules of Appellate Procedure, as amended, 430 Mass. 1603 (1999), provides in relevant part: "In a civil case, unless otherwise provided by statute, the notice of appeal . . . shall be filed with the clerk of the lower court within thirty days of the date of the entry of the judgment appealed from . . . ."

[9] Rule 4 (c) of the Massachusetts Rules of Appellate Procedure, as appearing in 378 Mass. 928 (1979), provides: "Upon a showing of excusable neglect, the lower court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule. Such an extension may be granted before or after the time otherwise prescribed by this rule has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the lower court shall deem appropriate."

moved to dismiss the appeal based on what they claimed was the late filing of the notice of appeal. On June 4, 2010, a single justice of the Appeals Court entered an order denying the motion and stating that the untimely filing "may be raised as an issue in appellee's brief."

b. *Discussion.* SRDP and the board press their claim that the plaintiffs' appeal must be dismissed because the motion judge lacked authority to allow the plaintiffs' motion to enlarge the time for filing the notice of appeal. We reject that argument.

The judgment entered on December 16, 2009. To be timely under Mass. R. A. P. 4 (a), the notice of appeal was required to be "filed with the clerk of the lower court" within thirty days, i.e., on or before January 15, 2010. The plaintiffs did not file their notice within that period. While it appears the notice was mailed on Friday, January 15, 2010, it was not received by the court, and therefore it was not "filed with the clerk," until January 19, 2010.[10] See *Garrett* v. *Director of the Div. of Employment Sec.,* 394 Mass. 417, 420 (1985) (filing and mailing are distinct concepts). It was therefore a few days late. Nonetheless, the motion judge was authorized by Mass. R. A. P. 4 (c), "[u]pon a showing of excusable neglect, . . . [to] extend the time for filing the notice of appeal . . . for a period not to exceed thirty days from the expiration" of the initial thirty-day appeal period. Because the plaintiffs filed their notice of appeal on January 19, they only required a four-day extension — well within the judge's authority — to render timely their notice of appeal filed on that date.

The fact that the plaintiffs did not move to enlarge the time for filing their notice of appeal until March 23, 2010,[11] did not deprive the motion judge of her power to grant an enlargement of time to January 19. Nothing in our jurisprudence requires that a motion to enlarge time be made or filed within the time

---

[10]January 18, 2010, was a legal holiday.

[11]The plaintiffs argue in their reply brief that the late filing of the notice of appeal on January 19, 2010, acted as a motion to extend the time to file the notice of appeal under rule 4 (c). That is incorrect. A notice of appeal, without more, is not a motion. Moreover, it is clear that the motion judge did not treat the plaintiffs' January 19 notice of appeal as a motion to enlarge the time for filing, because she asked the plaintiffs to make an oral motion to enlarge at the March 23 hearing.

permitted for an extension under rule 4.[12] What is critical is that the actual notice of appeal is filed within that time. In other words, the limitation in rule 4 is a limitation on the length of the extension of time that the judge is empowered to grant for filing the notice of appeal itself; the limitation does not restrict the period in which the judge may act or prescribe when a motion to enlarge time may be filed.

While this case concerns the authority of a trial court judge to act, it is similar to the situation where a single justice of an appellate court is asked to extend the time for filing a notice of appeal. See Mass. R. A. P. 14 (b). In *Commonwealth* v. *White*, 429 Mass. 258, 263-264 (1999), this court considered the authority of an appellate single justice, acting pursuant to rule 14 (b), to enlarge the period for filing a notice of appeal. The rule prohibits a single justice from enlarging the period "beyond one year from the date of judgment or ordered appeal from." We concluded that, "[w]hile under rule 14 (b) the one-year anniversary of the order to be appealed terminates the defendant's right to file a notice of appeal, it does not terminate the jurisdiction of an appellate court to consider a motion to enlarge the time, nunc pro tunc." *Id.* at 263. We think there is no reasonable basis for giving a different construction to rule 4 (c). Just as the date of filing the notice of appeal is the jurisdictional reference for an appellate single justice's authority under rule 14 (b) to enlarge the time, nunc pro tunc, it provides the same function for trial judges under rule 4 (c). Contrast *Commonwealth* v. *Boutwell*, 21 Mass. App. Ct. 201, 202, 205 (1985) (where notice of appeal was never filed, trial judge lacked authority to permit filing more than sixty days after guilty finding or imposition of sentence).[13],[14]

Having concluded that the appeal is properly before us, we

[12]It behooves an appellant to move under rule 4 (c) to extend the time for filing as promptly as possible after a timeliness issue comes to light. It would be for the motion judge hearing the motion to consider in the first instance whether deliberate delay in filing such a motion should be considered. We express no view on that point at this time.

[13]Dicta to the contrary in a rescript opinion of the Appeals Court, *Shaev* v. *Alvord*, 66 Mass. App. Ct. 910, 910 (2006), is an incorrect statement of the law.

[14]Rule 4 (c) requires that a motion to file a late notice of appeal be predicated on a showing of excusable neglect. After a hearing, the motion judge found

turn now to the question whether the plaintiffs qualify as "aggrieved" parties with standing to bring this appeal.

3. *The plaintiffs' standing to seek judicial review.* a. *Facts.* On or shortly before the first hearing date on SRDP's modification application, the plaintiffs filled out and submitted to the board registration forms entitled, "Registration of 10-Citizen Group." Each form contains an identical printed statement purporting to explain how the individuals signing the form as members of the citizen group would be affected by the proposed site assignment modification.[15] The hearing officer, whom we infer was acting pursuant to the department's site assignment regulations, admitted the citizen groups as full interveners in the matter, entitled to all rights of a party to call and cross-examine witnesses, introduce exhibits, and present arguments. See 310 Code Mass. Regs. §  16.20(9)(a), (c).[16]

---

that there was excusable neglect in this case. The defendants have not challenged that finding on appeal.

[15]The printed statement on each registration form reads: "STATEMENT OF HOW REGISTRANTS ARE SUBSTANTIALLY & SPECIFICALLY AFFECTED:

> "We, the undersigned residents of Southbridge, Sturbridge, and Charlton, with good cause hereby register to be a Party and petition to be a Ten Citizen Group Intervener in the above-described proceeding and to be represented by the Authorized Representative named above. [The plaintiffs' counsel, Kirstie L. Pecci, is the listed Authorized Representative on each form.] We live in the vicinity of the Southbridge Landfill and are substantially and specifically affected by the expansion of the landfill and its conversion from construction and demolition (C&D) to municipal solid waste (MSW) because it will: (a) cause an increase of noxious and foul smelling gases affecting residential areas for miles[;] (b) increase truck traffic on highways and side streets that emit strong odors, contaminated water and windblown litter causing a danger to public health & safety; (c) cause inevitable drinking water contamination[;] (d) devalue area homes. We make this statement under the pains and penalty of perjury."

[16]The cited regulations, 310 Code Mass. Regs. §  16.20(9)(a) and (c), read as follows:

"(9) *Intervention and Participation*

> "(a) Intervention. Any Person who with good cause wishes to intervene in a public hearing shall file a written request (petition) for leave to intervene. Persons whom the Hearing Officer determines are specifically and substantively affected by the hearing shall be allowed to intervene. For the purpose of the Public Hearing the

After the plaintiffs filed their complaint for judicial review in the Superior Court, SRDP and the board moved to dismiss, claiming that the plaintiffs were not persons "aggrieved" by the board's final decision and therefore lacked standing to bring an action under G. L. c. 30A, § 14, and § 150A. A Superior Court judge other than the motion judge denied the defendants' motion, reasoning that because the plaintiffs had been afforded full party status in the board's proceedings, they were entitled automatically to bring an action for judicial review of the board's decision as "aggrieved" persons. Later, in ruling on the plaintiffs' motion for judgment on the pleadings, the motion judge rejected the defendants' argument that the plaintiffs lacked standing for the same reason.

b. *Discussion.* To set a framework for consideration of the standing issue, we begin with a review of the pertinent statutory and regulatory provisions.

The siting and permitting of landfills and related facilities is governed by § 150A and the department's site assignment regulations, 310 Code Mass. Regs. §§ 16.00. Under § 150A, a person seeking to operate a site for a new landfill (or processing)

following persons shall be considered to be specifically and substantively affected by the hearing and shall be eligible to register as a Party to the hearing:

"1. Abutters. Any abutter or group of abutters to the proposed facility shall be a Party to the hearing by timely submission of a Party Registration Statement in accordance with 310 [Code Mass. Regs. §] 16.20(9)(b).

"2. Ten Citizens Groups. Any group of ten or more persons may register collectively as a Party to the public hearing in which damage to the environment, as defined in [G. L.] c. 214, § 7A, or public health and safety are or might be at issue; provided, however, that such intervention shall be limited to the issues of impacts to public health, safety and damage to the environment and the elimination or reduction thereof in order that any decision in the public hearing shall include the disposition of such issue.

" . . .

"(c) Rights of Intervenors. Any person permitted to intervene shall have all rights of, and be subject to, all limitations imposed upon a Party, however, the Hearing Officer may exclude repetitive or irrelevant material. Every Petition to intervene shall be treated as a petition in the alternative to participate."

facility or to expand an existing facility must submit a site assignment application to the appropriate local board of health, which is required "to hold a public hearing satisfying the requirements of [G. L. c. 30A]." *Id.* An owner or operator of an existing facility requesting a "minor modification" of the site assignment is not required to submit a full site assignment application, but the board is required to hold a public hearing on the request. 310 Code Mass. Regs. § 16.22(3). The department's regulations include a section prescribing "public hearing rules" to govern the public hearing process. See *id.* at § 16.20. One of these, § 16.20(9)(a), sets out requirements for party intervention in the proceeding before the board. This regulation provides that persons may intervene as parties if they make a written request and are considered by the hearing officer to be "specifically and substantively affected." It goes on to state that any citizen group of ten or more persons (ten-citizen group) "shall be considered to be specifically and substantially affected" and entitled to register as a "party" to a public hearing where damage to the environment "is or might be at issue." See note 16, *supra.*[17,18]

The final relevant statutory provisions relate to appeals. Section 150A states that "[a]ny person aggrieved" by the board's siting decision may appeal pursuant to G. L. c. 30A, § 14, and "[f]or the limited purposes of such an appeal," the board's final decision "shall be deemed to be a final decision in an adjudicatory proceeding." G. L. c. 111, § 150A. General Laws c. 30A, § 14, in turn, provides that judicial review is available to "any person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding." G. L. c. 30A, § 14.[19]

---

[17]The participation rights of a "party" in a site assignment proceeding are not defined in 310 Code Mass. Regs. § 16.20(9), but are set out in § 16.20(10)(e) ("All Parties shall have the right to present evidence, cross-examine, make objections and make oral arguments").

[18]As discussed *infra*, we read the provisions of 310 Mass. Code Regs. § 16.20(9)(a) just described to mean that ten-citizen groups such as the plaintiffs are entitled to full party status in the board's proceeding solely by virtue of their citizen group status, with no requirement for an individualized determination of how the landfill facility that is the subject of the public hearing will affect any of the citizen groups' members.

[19]Section 14 goes on to provide that "[a]ll parties to the proceeding before the agency shall have the right *to intervene* in the proceeding for review," (emphasis added), see G. L. c. 30A, § 14 (2), but the right to *bring* the

As the statutory provisions just quoted indicate, understanding the meaning of the term "person . . . aggrieved" in c. 30A, § 14, is critical. "In order to maintain an action for review [under c. 30A, § 14], a party must be aggrieved in a 'legal sense' and show that 'substantial rights' have been 'prejudiced.' " *Group Ins. Comm'n* v. *Labor Relations Comm'n*, 381 Mass. 199, 202-203 (1980), quoting *Duato* v. *Commissioner of Pub. Welfare*, 359 Mass. 635, 637-638 (1971).[20] Cf. *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 323-324 (1998) (participants in public hearing held on proposed insurance company merger did not have standing to seek judicial review because, inter alia, there was no showing they suffered "direct and certain injury" from commissioner's decision and therefore were persons aggrieved).

It is true that some of our decisions contain language suggesting an agency's designation of a person as an intervener with the right to participate fully as a party brings with it the right to seek judicial review of the agency decision as an "aggrieved person." See, e.g., *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 672-673, 676 (1975) (*Save the Bay*).[21] However, in *Save the Bay*, the court was discussing intervention in an administrative agency's "adjudicatory proceeding" as defined in G. L. c. 30A, § 1, that is, an agency proceeding in which the rights of "specifically named persons" are adjudicated. Under G. L. c. 30A, an agency conducting an adjudicatory pro-

proceeding for review is restricted to a person "aggrieved" by the administrative agency's final decision. G. L. c. 111, § 150A.

[20]The court further stated: "Not every person whose interests might conceivably be adversely affected is entitled to [judicial] review. . . . '[I]n many, if not most, circumstances, the injury complained of may be too remote to make the party seeking review a "person aggrieved." ' " (Citation omitted.) *Group Ins. Comm'n* v. *Labor Relations Comm'n*, 381 Mass. 199, 204 (1980), quoting *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 46 (1977).

[21]The Superior Court judge who denied the defendants' motion to dismiss the complaint relied on *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667 (1975), in concluding that persons such as the plaintiffs here, who have been granted full party status before the administrative agency, have standing to seek judicial review as "aggrieved person[s]." That judge, as well as the motion judge, also cited *Andover* v. *Energy Facilities Siting Bd.*, 435 Mass. 377, 378 n.3 (2001), for the same proposition. In the *Andover* case, the court noted that there was no challenge to the plaintiffs' standing, see *id.*, but the court's opinion might be read as supporting the view that full party status before the administrative agency allows an intervener to appeal from the agency's decision as an aggrieved party or person.

ceeding may "allow any person showing that he may be sub-stantially and specifically affected by the proceeding to intervene as a party in the whole or any portion of the proceeding." G. L. c. 30A, § 10 (4). As that language reflects, such a determination of intervening party status is based on individual facts establish-ing the "substantial and specific" effect that the proceeding may have on the individual or entity seeking to intervene. If an agency decides that a particular person is "substantially and specifically affected" by a proceeding to a degree warranting intervention as a party, it is likely the person also will be able to establish that he or she qualifies as a person "aggrieved" for purposes of obtain-ing judicial review of the agency's decision.[22]

The public hearing before the board, however, was not an ad-judicatory proceeding, as 310 Code Mass. Regs. § 16.20(1) states explicitly,[23] and as the plaintiffs correctly acknowledge. Under the department's site assignment regulations, 310 Code Mass. Regs. § 16.20(9), citizen groups such as the plaintiffs acquire party status automatically, at least where, as here, there are claims of damage to the environment. See 310 Code Mass. Regs. § 16.20(9)(a); note 18, *supra.* In other words — as is

---

[22]At the same time, we have made the point that full intervention as a party in an adjudicatory proceeding does not translate automatically into being "ag-grieved" by the agency's decision. See, e.g., *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 780, 805 (1975). See also *American Hoechest Corp.* v. *Department of Pub. Utils.*, 379 Mass. 408, 410-411 (1980) (while appellants were clearly "parties," not as clear they were "aggrieved" by challenged decision of agency; however, because they would be required to bear part of economic burden of agency's decision, court concluded they had standing to bring appeal).

[23]A preamble to 310 Code Mass. Regs. § 16.20(1) states:

" 'Public Hearings' pursuant to [G. L.] c. 30A are not 'Adjudicatory Proceedings' within the meaning of [G. L.] c. 30A, § 1. See [G. L.] c. 30A, § 2. Pursuant to [G. L.] c. 111, § 150A [§ 150A], however, 'for the limited purpose of appeal from such public hearings, a local board of health shall be deemed to be a state agency under the provi-sions of said [c. 30A] and its proceedings and decision shall be deemed to be a final decision in an adjudicatory proceeding.' The public hearing process is designed to permit the flexibility and informality appropriate to the board of health proceeding, while providing the board of health with procedural direction and the authority to create a record and render a decision within a limited time period which is amenable to the procedures and the standards of judicial review applicable under [G. L.] c. 30A, § 14."

461 Mass. 548 (2012)                                    559

Board of Health of Sturbridge *v.* Board of Health of Southbridge.

borne out by the record in this case — the board makes no individualized determination of how the specific group or any of its members may be affected by the proceeding, but is directed by the regulation to treat the group as a full party simply because it is a citizen group.

The grant of full party status to citizen groups under 310 Code Mass. Regs. § 16.20(9) presumably is designed to enable the board to receive relevant information about environmental impacts of proposed siting decisions from a broad array of persons. But the regulation and its purpose do not themselves entitle the plaintiffs to seek judicial review of the board's final decision as persons "aggrieved." See *Ginther* v. *Commissioner of Ins.*, 427 Mass. at 324 ("Mere participation in the administrative process does not confer standing to raise a claim in the Superior Court").[24] Rather, it is necessary to determine whether any of the plaintiff citizen groups, or, more particularly, any individual members of the citizen groups, have shown or even alleged prejudice to their own substantial rights. See *Duato* v. *Commissioner of Pub. Welfare*, 359 Mass. at 637. Put another way, have any of the citizen group members shown or alleged "substantial injury" to themselves that would result directly from the board's approval of the proposed site assignment modification? See *Ginther*, *supra* at 322, quoting *Harvard Law Sch. Coalition for Civ. Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 69 (1992). See also *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 631 n.8 (2005).[25]

The administrative record does not support a conclusion that

---

[24]In other contexts, we have recognized that participation in an administrative decision-making process that is not an adjudicatory proceeding, while enabling the administrative agency to receive information from a broad range of sources, does not necessarily give the participant the right to seek judicial review. See, e.g., *Enos* v. *Secretary of Envt'l Affairs*, 432 Mass. 132, 137-139 (2000) (participation in environmental review before Secretary of Environmental Affairs encourages full disclosure of environmental impacts of proposed project, but does not allow participants to challenge Secretary's decision). See also *School Comm. of Hudson* v. *Board of Educ.*, 448 Mass. 565, 577-578 (2007) (charter school application process requires public hearing at which plaintiffs participated, but that fact did not entitle them to appeal from board's decision to grant charter; process allows public to be informed and to comment on application, but final decision is legislative in nature and rests with board).

[25]*Goldberg* v. *Board of Health of Granby*, 444 Mass. 627 (2005), was a case, like this one, involving a challenge to a board of health's landfill siting

any of the plaintiffs will suffer prejudice to their individual rights. The only record evidence on the issue is the set of registration forms. These reflect that the plaintiffs live in the "vicinity" of the landfill, although not necessarily in Southbridge itself.[26] But regardless of whether they live in Southbridge or a neighboring town, there is no indication of how close any of the members of the citizen groups may live to the landfill and, therefore, no indication as to what direct or specific impact the proposed modification of the landfill may have on any of them. The identical statement of how the plaintiffs are "substantially [and] specifically affected" on each of the registration forms (see note 15, *supra*) is essentially a general and collective assertion of injury. Because neither the registration form nor any other part of the record contains information describing the specific relationship of any plaintiff to the landfill — whether by physical proximity or otherwise — it is impossible to conclude that any of the plaintiffs may claim injury that is special to them and different from a generalized concern of the community. Contrast *Save the Bay*, 366 Mass. at 674-676 (although unincorporated association participating in agency proceeding could not be party to judicial appeal from agency decision, one of its members who owned property abutting facility at issue had standing as aggrieved party). Cf. *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 27-28, 33 (2006) (discussing standing as "person aggrieved" under zoning and comprehensive permit statutes, G. L. c. 40A and c. 40B).[27] Cf. also *Harvard Law Sch. Coalition for Civ. Rights* v. *President & Fellows of Harvard College*, 413 Mass. at 68-69

decision. The plaintiffs in the *Goldberg* case were not citizen groups but individuals who had participated in the administrative proceedings before the board of health. *Id.* at 627 n.1. The court discussed the need of the plaintiffs to establish that they were "aggrieved" by the board of health's decision within the meaning of G. L. c. 30A, § 14, but then assumed without deciding that the individual plaintiffs had done so because they were "close neighbors of the landfill, who complained of the negative impacts of an enlarged landfill on their health and property." *Id.* at 631 n.8.

[26]In addition to Southbridge, some citizen group members live in Sturbridge, some in Charlton, and at least one in Brimfield.

[27]The defendants state in their brief that this court "has expressly ruled that the aggrievement standard in site assignment cases reviewed under [G. L. c.] 30A follows the standard established in zoning appeals under [G. L. c.] 40A, § 17." That is not the case. Citation to two zoning cases for illustrative

461 Mass. 548 (2012)                                        561

Board of Health of Sturbridge *v.* Board of Health of Southbridge.

(discussing requirements for establishing standing as "persons aggrieved" under G. L. c. 151B, § 9).[28]

To summarize: although, pursuant to 310 Code Mass. Regs. § 16.20(9), the plaintiffs qualified as interveners with full party status before the board, the record does not support their claim that they have standing to appeal to the Superior Court as persons "aggrieved." As interveners, the plaintiffs would have the right to intervene in an appeal brought by an aggrieved person whether or not they were aggrieved themselves, G. L. c. 30A, § 14 (2), see note 21, *supra*, but on the present record they were not entitled directly to initiate an action for judicial review. The defendants' motion to dismiss the plaintiffs' complaint should have been allowed for lack of standing. Nevertheless, we turn briefly to the merits of the plaintiffs' challenge to the board's decision, because the parties have fully briefed and argued

purposes in a footnote in *Goldberg* v. *Board of Health of Granby*, 444 Mass. at 631 n.8, does not reflect a holding that the determination whether one qualifies as a "person aggrieved" for purposes of bringing an appeal under c. 30A, § 14, is identical to deciding whether a person is "aggrieved" for purposes of appealing from a zoning decision under G. L. c. 40A, § 17. The Zoning Act, G. L. c. 40A, seeks to advance and protect interests different from G. L. c. 111, § 150A, and certainly judicial review of an agency decision under c. 30A, § 14, is very different from judicial review of a local zoning board's decision under c. 40A, § 17: review under c. 30A, § 14, is confined to the administrative record and applies a substantial evidence test; c. 40A, § 17, requires the reviewing judge to hear evidence and find facts de novo, including facts related to standing. See *Kenner* v. *Zoning Bd. of Appeals of Chatham*, 459 Mass. 115, 117-120 (2011). See also *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996).

[28]In her argument before the court, the plaintiffs' counsel adopted a position advocated by the amici Conservation Law Foundation and Charles River Watershed Association, to the effect that as citizen groups the plaintiffs had standing to appeal under G. L. c. 30A, § 10A. That section provides in pertinent part that "not less than ten persons may intervene *in any adjudicatory proceeding as defined in [G. L. c. 30A, § 1]*, in which damage to the environment . . . is or might be at issue . . . . Any such intervener shall be considered a party to the original proceeding for the purposes of notice and any other procedural rights applicable to such proceeding . . . *including specifically the right of appeal.*" (Emphases added.) *Id.* The position now advanced by the plaintiffs must fail, however, because as discussed in the text, *supra*, the board's proceeding under § 150A was *not* an adjudicatory proceeding but, rather, involved a public hearing. The fact that under § 150A, "[f]or the limited purposes" of an appeal, the board's final decision is "deemed to be a final decision in an adjudicatory proceeding," *id.*, does not change the nature or character of the board's proceeding itself.

them, and it is appropriate to bring a final resolution to this case. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

4. *Merits.* At issue is the board's decision to grant SRDP a minor modification to its existing site assignment.[29] The burden is on the plaintiffs, as the challenging parties, to prove that the decision is not supported by substantial evidence, based on error of law, arbitrary or capricious, or an abuse of discretion. G. L. c. 30A, § 14 (7). "In our review of administrative agency decisions, we generally defer to the experience, technical competence, specialized knowledge, and discretionary authority of the agency." *Heublein, Inc.* v. *Capital Distrib. Co.*, 434 Mass. 698, 705 (2001), citing *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 721 (1988).

The plaintiffs assert that the board's decision should be reversed because it is based on two errors of law. In particular, they claim that the board (1) erroneously expanded the acreage that previously had been site assigned, based on SRDP's misrepresentation of that area in its application for a minor modification; and (2) incorrectly approved a modification for the processing facility even though that facility is not (a) located on land that was properly site assigned, or (b) a permitted accessory use of an existing site assigned area. These claims are without merit.

Contrary to the plaintiffs' repeated assertions, the record demonstrates that both the landfill and processing facilities are

---

[29]The owner or operator of a landfill or other facility located on an existing assigned site may seek a major or minor modification of the site assignment. A major modification is one that expands the volume of waste disposed of at an existing facility, expands the site vertically beyond the previously approved limits, or requests a different use from the assigned solid waste activity, subject to a list of exceptions. See 310 Code Mass. Regs. § 16.22(2), citing § 16.21(1), (3). A minor modification includes a request to modify a site assignment that would not be considered a major modification or a modification due to a threat to public health, safety, or the environment. See 310 Code Mass. Regs. § 16.22(1), (3).

A request for a major modification requires that the applicant submit to the local board of health a new site assignment application and a positive site suitability determination by the department, and then participate in a public hearing conducted by the local board. See 310 Code Mass. Regs. §§ 16.22(2), 16.08, 16.20. As stated earlier, an application for a minor modification requires only that the board hold a public hearing on the request. See *id.* at § 16.22(3).

located on land that was site assigned either in 1979 or in 1999. The plaintiffs argue that only 20.6 acres of land was site assigned in the 1979 site assignment. However, that site assignment was not for a specifically delineated acreage, but for "a tract of land presently owned by George Corriveau in the Barefoot Road section of Southbridge." In 1979, before the town of Southbridge changed its boundaries (see St. 1993, c. 210), the tract in question was approximately sixty-four acres. The site assignment designated 20.6 acres of it for waste disposal, but the over-all site assignment was for the bigger tract, namely, the full sixty-four acres of land previously owned by Corriveau and located in Southbridge.[30] With respect to 1999, the plaintiffs similarly confuse the acreage designated for waste disposal with the entire portion of land being site assigned.[31] SRDP did not misrepresent the acreage of site assigned land in the 2008 request for minor modification at issue here, and the board did not make its decision based on an incorrect determination of that acreage.

Turning to the plaintiffs' argument focused on the processing facility, to the extent it depends on the claim that the facility is not on site assigned land, it must fail because, as just discussed, both the landfill and processing facilities are located on land that was properly site assigned in 1979 and 1999. The plaintiffs' additional claim that "processing" is not a properly approved use of the site also must be rejected: the processing activity undertaken at this facility was and is a recognized exception to the general prohibition, spelled out in 310 Code Mass. Regs. § 16.21(3), against conducting a different solid waste activity on an area site assigned for a specific solid waste purpose. See

[30]In 2008, the department, in response to a request of the plaintiffs to undertake an enforcement action against SRDP, reviewed available historical material and determined that the entire sixty-four-acre parcel, not only the 20.6 acres north of Barefoot Road, was site assigned.

[31]The plaintiffs claim that the board limited the actual site assignment made in 1999 to 32.2 acres, even though in connection with the 1999 site assignment application, the department had issued a site suitability report that approved an 82.2-acre expansion of the 1979 site assignment. In fact, however, the board's 1999 decision expressly incorporated the department's site suitability report approving 82.2 acres as suitable for assignment; the smaller 32.2-acre portion on which the plaintiffs focus represents the specific portion of the site that would be used for waste disposal.

310 Code Mass. Regs. § 16.21(3)(a) (1994) ("Recycling or com-
posting may be approved at any assigned, permitted active disposal
or handling facility without requiring a new or modified site as-
signment when such activity is integrated into the assigned solid
waste management operation and the tonnage limits . . .").[32]
Substantial evidence in the record, including the department's site
suitability report prepared in connection with the earlier, 1999
application for a major modification to the 1979 site assignment,
shows that the processing facility was designed to increase
recycling and would be integrated into the existing landfill facility.
Furthermore, in connection with the review it undertook in 2008
(see note 30, *supra*), the department concluded that the board's
approval of the name change for the landfill facility (see note 32,
*supra*) was proper and the processing facility was not operating
without a valid site assignment.

The plaintiffs' final argument is that the modification sought
by SRDP in 2008 in substance was a "major" modification,
and the board improperly treated it as a "minor" modification,
thereby permitting SRDP to avoid the more rigorous review that
§ 150A and the department's regulations called for. The claim
cannot succeed because it necessarily depends on acceptance of
the plaintiffs' position that the landfill and processing facilities
currently operate on land that has not properly been site as-
signed — a position that we have rejected.

5. *Conclusion.* For the reasons discussed in this opinion, the
judgment of the Superior Court is vacated, and the case is
remanded to that court for entry of a judgment of dismissal for
lack of standing.

*So ordered.*

---

[32]Under 310 Code Mass. Regs. § 16.02, a "Solid Waste Management
Facility" may be used for processing directly related to solid waste activities.
On November 16, 1998, the board unanimously voted to change the original
name of the landfill facility involved in this case from "Existing Sanitary
Landfill Facility" to "Solid Waste Management Facility," thereby bringing the
facility within the express language of the regulation.